**LOVE et al. v. ÆTNA CASUALTY & SURETY CO. et al.**

No. 3019.

Court of Civil Appeals of Texas. Beaumont.
Nov. 25, 1936.

Rehearing Denied Dec. 2, 1936.

Harry B. Berry, of San Antonio, for appellants.

Johnson, Rogers & Slatton, of San Antonio, for appellee.

O'QUINN, Justice.

Appellants, Tom Love, Victoria Houston, a feme sole, and Cora Davis, a feme sole, brother and sisters of Orange Love, deceased, brought this suit against the Ætna Casualty & Surety Company, and the Ætna Life Insurance Company to recover damages for the mutilation and unlawful dissection and autopsy performed without their knowledge or consent in and upon

the dead body of their brother, Orange Love. The Ætna Casualty & Surety Company was by mistake made party defendant, and passed out of the case and will not be further mentioned.

As grounds for recovery, plaintiffs, appellants, alleged:

"That a short time after the death of the brother, Orange Love, of the plaintiffs, in June 1933, and while the dead body of their brother, was undergoing preparation for burial at the funeral home of Carter-Sutton, San Antonio, Texas, the defendants, or one of them, procured and caused to be made a wrongful autopsy and dissection of the dead body of said Orange Love without the knowledge or consent of the plaintiffs or any of them. Said dissection was performed by Doctors Goodson and Stout of San Antonio, same being procured and caused by arrangements of defendants, which arranged for, directed and wilfully caused said autopsy to be made in flagrant indifference and disregard to the sensibilities and feelings of the plaintiffs so as to amount to a malicious wrong as hereinafter set out.

"II. Pleading in the alternative as to the arrangements and procuring of said autopsy, such facts being wholly in the possession of defendants, plaintiffs say that one C. E. Klein, adjuster for both of defendants, and vice principal and to whom was confided the complete and exclusive control of the matter and department of adjusting claims against defendants, went to the Justice of the Peace and requested and otherwise procured the issuance of an order by said Justice of the Peace, whereby said autopsy was performed without the consent of any of the plaintiffs on their brother. Said attempt to procure such autopsy by means of a demand or request on said Justice of the Peace, did not result in the validity of said inquest, for the reason none of the prerequisites required by law nor the elements of said attempted inquest were performed, and plaintiffs say that such act of performing a hacking on plaintiffs' brother, was without legal sanction and for which defendants through the request of their agent in soliciting said authority, are liable for said trespass and mutilation of the body of Orange Love.

"III. The dissection was performed by the physicians aforesaid by proceeding to said funeral home where the body lay, and there removing by cutting the vital organs of the body, such as the heart, liver, spleen, kidneys and other contents of the inner abdomen. Proceeding as aforesaid under arrangement of the defendants, or by ineffectual attempt of said C. E. Klein to procure said autopsy by means of a legal inquest, said physicians slashed, opened, cut and probed the parts and contents of said body about the middle, but not returning such organs of Orange Love as the heart, spleen, liver and kidneys. Having probed and taken apart the body for the purposes, as will be hereinafter alleged, said physicians turned it back to the custody of the undertaker, made report of their examination to defendants and received their fee and pay from defendants for the work arranged for and ordered as aforesaid.

"IV. Orange Love died without wife or his own family, and during the last years of his life had lived with two of the plaintiffs, and was so living at the time of his death on or about the 16th of June, 1933. It was the primary duty of plaintiffs to bury the remains of their brother, and it was while awaiting such burial that the mutilation and dismemberment of the body took place, and without plaintiffs' consent as aforesaid, and soon thereafter, plaintiffs discharged such responsibility and duty by interring the body at a cemetery, plaintiffs being the next of kin of said Orange Love and being as brother and sisters the nearest degree, and having as aforesaid, placed said body in the possession of the undertaking in preparation for burial.

"V. Said examination of the body of plaintiffs' brother was procured and caused to be done by the defendants as heretofore alleged, for the purpose of determining the cause of death as a purely commercial inquiry, wherein said Orange Love during his lifetime had applied for compensation for an alleged injury sustained during his employment for a company for which the defendants were compensation and industrial insurers. Defendants contested said claim before the Industrial Board at Austin, and upon the death of the claimant, Orange Love, and in order to defeat the claim of his heirs, the plaintiffs, maliciously and wantonly procured and caused said autopsy to disprove from such report, the manner of injury, alleged by said Orange Love as to have incurred as an industrial accident, defendants using and filing such report of autopsy as evidence at a hearing of the said claim, and which claim if approved

as a potential liability would have been chargeable to the defendants as insurers as aforesaid.

"VI. Information of the brutal and arrogant dissection came as a shock to plaintiffs, causing extreme mental anguish, suffering and distress of mind, such unauthorized autopsy being a flagrant indignity and outrage on the feelings of plaintiff at the time of the death of their brother, and same being with inexcusable indifference and gross disregard to the sentiments of regard for the condition of the body of Orange Love, plaintiffs being entitled as nearest of kin and those responsible for his burial, to have said body as death had left it, without interference therewith. Said sense of indignity and outrage were proximately caused by the acts as aforesaid of defendants in procuring said autopsy, said act, if defendants answer was done officially and under color of a public officer, was without any quality of validity and ineffectual except as an act set afoot by the request and arrangements of defendants or their agents with a design to use such report of autopsy purely commercially. Plaintiffs say that if it be found that C. E. Klein actually went to the Justice of the Peace to ask for and arrange an autopsy on the body of Orange Love, that such inquest or/and autopsy were illegal, void and lacking in the requirements of the law or statute, more especially such justice of the peace being without probable cause in ordering such autopsy, if said Justice of the Peace did so order. Plaintiff's damages for the injury to their feelings for their dead brother, should be compensated for by defendants in the sum of $5,000.00."

Defendants, appellees, answered by general demurrer and general denial.

The cause was tried to a jury, but after appellants closed their evidence, on motion of the defendants, the court instructed the jury to return a verdict for the defendants, which was done and judgment accordingly entered. We have the case on appeal.

■ It is urged that the instructed verdict was error. It does not appear that defendants' general demurrer was presented to or acted on by the court. So same was waived. The question is, Did the evidence raise a question for the jury? We gather from the record:

(a) That Orange Love, the deceased, was a brother of appellants, and prior to and at the time of his death he did not have any family—neither wife nor child, but was living with his brother Jim Love (who is now dead) and had lived with various of his brothers and sisters for years before his death on June 15, 1933. His parents were dead, and appellants are all of his surviving brothers and sisters.

(b) When Orange Love died, his sister Cora Davis sent his body to Carter & Sutton, undertakers, for burial. While the body was in the possession and charge of Carter & Sutton, it was taken possession of by Drs. Goodson and Stout and an autopsy performed upon the corpse in which the body was thoroughly explored by opening same and taking out the heart, kidneys, liver, spleen, and bowels, and these were cut into, portions denuded therefrom and never returned, but carried off for chemical investigation. All this without the permission of appellants, and without their knowledge or consent. No sort of request was made to them respecting the autopsy, nor any sort of notice given them that the autopsy was to be performed or had been performed. They were completely ignored in the matter. The autopsy was performed June 22, 1933. After learning of the autopsy, appellants had the body buried and this suit followed.

(c) Prior to his death, deceased, Orange Love, had been an employee of and worked for the San Antonio Compress Company, which carried compensation insurance covering its employees with Ætna Insurance Company, appellee. Deceased had complained that he had suffered an injury to his abdomen while handling a bale of cotton, and had made claim to the compensation board for compensation under the insurance carried by appellee Ætna Life Insurance Company. Pending his claim before the board, he died. His brothers and sisters, appellants, then renewed the claim for said compensation. July 12, 1933, appellee Ætna Life Insurance Company filed notice with the board that it denied liability, and later, July 25, 1933, filed with the board a copy of the report on the autopsy held on the body of deceased, Orange Love. This for the purpose of defeating appellants' claim for compensation. The claim was refused.

(d) During June, 1933, Hon. John R. Shook was justice of the peace, precinct No. 1, city of San Antonio, Bexar county, Tex. C. E. Klein, with office in San An-

tonio, was claim adjuster for appellee Ætna Life Insurance Company, and received and handled the claim, of Orange Love for compensation because of his alleged injury as an employee of the San Antonio Compress Company. This claim was pending at the time of the death of Orange Love and at the time the autopsy on his body was performed. Klein, as claim adjuster for appellee, was actively in charge of the investigation of this claim. He testified:

"I went to the Justice of the Peace and laid before him the facts as I had them, and he ordered the autopsy."

"After I got the report of the autopsy in due time it was sent to Austin. My office sent it up there."

He further testified:

"I said I went to the Justice of the Peace about this matter. I went to him to give him the information that our investigation had disclosed. As to what investigation I had made, the man alleged that he had sustained an injury on a certain date, and the investigation did not even disclose that he had been working there at that time on that day, or that he had ever received an injury there. They were claiming that he died as a result of the injuries and our investigation did not disclose that he got hurt at the plant. I went to the Justice of the Peace to give him the information I had. At the time I laid the facts before the Justice of the Peace I did not know what the result would be. As to whether I went to the Justice of the Peace to disprove the facts, I just stated I was interested in the facts in this compensation claim. * * * I said I went there as a citizen would, but it was in the course of my work. I went as a citizen would, to lay before the Justice of the Peace the facts, because we were interested in determining the cause of this man's death."

Again, he testified:

"I gave Judge Shook all the information that I had regarding this man's claim and what our investigation disclosed. * * * I said that it was claimed that his death was the result of the accident and we were interested in determining whether it was. I gave these facts to Judge Shook and he ordered the autopsy. I never asked Judge Shook for an autopsy at all."

(e) Dr. Goodson, county health officer, testified:

"I remember the autopsy on the body of Orange Love. I performed that autopsy. I never knew anything about Orange Love having died until Mr. Klein of the Ætna Life Insurance Company called me up. He said he had died and they were alleging an injury, I think they claimed, was the cause of his death, so he said, 'what can you do about it'. I said, 'if there is any question about his death you can see if the Justice of the Peace wants to order an inquest or autopsy', so he said, 'all right'. The next thing I heard was he phoned me from Judge Shook's office. * * * I told him in case the county did not pay it, I would expect the Ætna Life Insurance Company to pay me, and he said they would. I did not apply to the county judge for pay, but I did apply to him for pay, and it was paid with a check. The amount was $50.00. As to whether I made an agreement with Mr. Klein to give him a copy of the report of the autopsy * * * he was paying for it. It was his. I furnished him with a copy. The $50.00 from the Ætna Life Insurance Company was for the performance of the autopsy."

Dr. Stout testified that at the request of Dr. Goodson he assisted in performing the autopsy on the body of Orange Love; that he wrote up the report of the autopsy, and sent it to the Ætna Life Insurance Company; and that the Ætna Life Insurance Company paid him $50 for his services.

It is insisted by appellee that the instructed verdict was proper and the judgment should be affirmed because:

(a) The autopsy was performed by the county health officer upon the order of the justice of the peace, who was authorized by statute to order an autopsy to be performed on the body of the deceased. Article 968, Code Criminal Procedure, 1925, provides:

"Any justice of the peace shall be authorized, and it shall be his duty, to hold inquests without a jury within his county, in the following cases:

"1. When a person dies in prison.

"2. When any person is killed, or from any cause dies an unnatural death, except under sentence of the law, or in the absence of one or more good witnesses.

"3. When the body of a human being is found, and the circumstances of his death are unknown.

"4. When the circumstances · of the death of any person are such as to lead to suspicion that he came to his death by unlawful means."

Article 970, Code Criminal Procedure, provides:

"Upon an inquest held to ascertain the cause of death the justice shall, if he deems it necessary, call in the county health officer, or, if there be ,none, or if it be impracticable to secure his services, then some regular physician, to make an autopsy in order to determine whether the death was occasioned by violence; and if so, its nature and character. The county in which such inquest and autopsy is held shall pay to the physician making such autopsy a fee of not less than ten nor more than fifty dollars, the excess over ten dollars to be determined by the commissioners court after ascertaining the amount and nature of the work performed in making such autopsy."

██ These statutes should be construed together. It is obvious that the statutes above were intended to and do apply only in securing evidence for the suppression and prosecution of crime. When the evidence above set out is considered, there is not a hint that the autopsy was sought or held for the purpose of detecting a crime, but was sought by appellee Ætna Life Insurance Company for the sole purpose of defeating a claim against it for civil damages—compensation for an injury received as an employee of the San Antonio Compress Company, the insurance for which appellee carried. These statutes do not authorize an autopsy for any such purpose. The justice was without authority to order the autopsy, and its holding, under the undisputed facts disclosed by the record, was unlawful. Appellants, being the next of kin to the deceased, it was their duty to preserve the body of their dead brother, and provide burial for same, and for this purpose the law gave them the right of possession of the body, and any interference with that right by mutilating or otherwise disturbing the body by appellee, without their consent, was an actionable wrong for which appellants can maintain their action against appellee for damages. 13 Tex.Jur. § 15, p. 509; 8 R.C.L. § 18, p. 695; 17 C.J. § 19, p. 1144; Larson v. Chase, 47 Minn. 307, 50 N.W.. 238, 14 L.R.A. 85, 28 Am.St.Rep. 370; Streipe v. Ins. Co., 243 Ky. 15, 47 S.W.(2d) 1004.

The petition stated a cause of action, and the evidence supported the allegations, and it was error for the court to direct a verdict against appellants.

(b) But it is insisted by appellee that if the autopsy was illegally performed, and if it was procured by their local claim adjuster, Klein, it was without the scope of his employment, and not by virtue of any authority, either express or implied, and so would not render it liable for such wrongful autopsy, wherefore the court correctly instructed a verdict for appellee.

This contention is overruled. Klein testified:

· "I had the San Antonio Claim Department with Ætna Life Insurance Company. I had no superior in this city. My decisions were not reviewed by anybody in San Antonio. The first superior above me in claim matters is in Hartford, Connecticut. * * * In most cases I have the power and authority to make a settlement myself with the claimant, and I have the power to contest claims if I thought best. * * * The fact is that I am in charge of the entire office that has to do with adjustments. I have authority to make complete settlements in a case. I have already testified that I am in complete charge of the Adjustment Department, and that my adjustments are final, with the exception of those cases I submit to the Home Office and where they instruct me direct. I did not submit this case to the Home Office. I disposed of this entirely according to my own judgment. I investigated this case of Orange Love, endeavoring to obtain all the facts, and I went to the Justice of the Peace's office. The Ætna Life Insurance Company did not give me any directions in this case at all. I had complete power myself to handle the case".

And further:

"When I saw Judge Shook, I saw him in behalf of the Ætna Life Insurance Company."

Elmer Abbey testified that he was general agent in the life department of the Ætna Life Insurance Company at San Antonio; that he knew C. E. Klein; that Klein was claim adjuster for the Ætna Life Insurance Company; and that he, Abbey, did not have any control over Klein, nor did Klein make any reports to him. Appellee Ætna Life Insurance Company did not offer any evidence to contradict Klein's testimony as to his powers

in acting for the company—in fact offered no testimony whatever.

 We think it plainly appears that Klein in procuring the autopsy was acting as the fully authorized agent of appellee, within the scope of his employment, and in the exercise of his discretion given him in the investigation of and approval or rejection of claims against his company. But if not, still appellee is liable because after the autopsy was had, it approved Klein's acts and paid the doctors for their services in performing the autopsy, and accepted the benefits of same by receiving the report of the autopsy from the doctors and filing a copy of same with the Industrial Accident Board where the claim for compensation for the death of Orange Love was then pending, and which was later refused.

The judgment is reversed and the cause remanded for a trial on the merits of the case.