**LIONS EYE BANK OF TEXAS, Appellant,**

v.

**Levi V. PERRY, Sr., Eula Perry, Christopher Perry, and Patricia Perry, Appellees.**

No. 14–99–01170–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 6, 2001.

Rehearing Overruled Oct. 11, 2001.

---

Kevin William Yankowsky, Houston, for appellant.

Cletus P. Ernster, George E. Cire, Houston, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and SEYMORE.

## OPINION

ANDERSON, Justice.

Appellant, Lions Eye Bank of Texas (the "Eye Bank"), appeals from the judgment entered in favor of appellees, Levi V. Perry, Sr., Eula Perry, Christopher Perry, and Patricia Perry (the "Perrys"), on their claim that the Eye Bank was negligent in performing a whole eye enucleation on the deceased, Levi V. Perry, Jr. ("Levi"). We conclude the Perrys cannot recover mental anguish damages on their claim for negligence in this case, and reverse the judgment of the trial court and render judgment that the Perrys take nothing on their negligence and gross negligence claims against the Eye Bank.

## I. BACKGROUND

Levi, who was the son of Levi Perry, Sr. and Eula Perry and the older brother of Christopher Perry and Patricia Perry, was jogging in MacGregor Park in Houston at approximately 9:45 p.m., on May 31, 1994, when he sustained four gunshot wounds to the head during the course of a robbery. Levi was taken to Ben Taub Hospital where he was pronounced dead upon arrival. At the hospital, Levi Perry, Sr. signed a "Harris County Hospital District Consent for Postmortem Procedures" form, refusing all organ and tissue donation, including eyes and corneal tissue, on the previously expressed desires of Levi. Levi's body was transferred to the Harris County Medical Examiner's Office for the performance of an autopsy.

During the viewing of Levi's body at the funeral home a few days later, Levi's sister, Angela Perry, who is an ophthalmologist, noticed that Levi's eye lids did not look normal. When Angela investigated by prying open Levi's eyes, she discovered that Levi's entire eyes had been removed from the sockets and corneal caps had been inserted in place of the eyes. This whole eye enucleation occurred without the Perrys' permission and against Levi's wishes. Upon inquiry, someone from the Medical Examiner's Officer told Angela that Levi's eyes were not in their sockets at the time of the autopsy and that its office is not involved in the harvesting of organs for donation. An employee of the funeral home told Angela that Levi's eyes were not present when Levi's body arrived at the funeral home. From these conversations, Angela concluded the Eye Bank had removed Levi's eyes.

Eye Bank technician, Gabriel Hernandez, testified that with the permission of the Medical Examiner, he took Levi's corneal tissue prior to the autopsy, and he did not see anything in the medical records

indicating that Levi's family had not consented to the removal of the corneal tissue.[1] The Eye Bank maintains that Hernandez took only the corneal tissue and did not take the eyes in their entirety.

The Perrys sued the Eye Bank for negligence, gross negligence, and intentional infliction of emotional distress, and sought mental anguish and punitive damages.[2] At trial, the jury found the Eye Bank had negligently enucleated Levi's eyes. The jury awarded actual damages for mental anguish to Levy Perry, Sr. in the amount of $50,000, Eula Perry in the amount of $30,000, Christopher Perry in the amount of $15,000, and Patricia Perry in the amount of $15,000. The jury further awarded the Perrys, collectively, $200,000 in exemplary damages on their gross negligence claim. The jury, however, did not find in favor of the Perrys on their claim for intentional infliction of emotional distress.[3] The trial court entered judgment in accordance with the jury's verdict.

In this appeal, the Eye Bank asserts: (1) the Perrys cannot recover for negligent infliction of mental anguish; (2) the evidence is legally and factually insufficient to support the Perrys' recovery of mental anguish damages; (3) Christopher Perry and Patricia Perry do not have standing to bring this lawsuit; (4) the evidence is legally and factually insufficient to support a finding that an Eye Bank employee enucleated Levi's eyes; (5) the Texas Health & Safety Code precludes a finding of liability against the Eye Bank; (6) the evidence is legally and factually insufficient to support the Perrys' recovery of punitive damages; and (7) the trial court erred in allowing Angela Perry to testify. Because it is dispositive of this appeal, we will address the issue of whether the Perrys may recover for the negligent infliction of mental anguish.

## II. Negligent Infliction of Mental Anguish

The Eye Bank contends the Perrys cannot recover for the negligent infliction of mental anguish. To prevail on a cause of action for negligence, the plaintiff must satisfy three elements: (1) a legal duty owed by the defendant to the plaintiff; (2) breach of that duty; and (3) damages proximately caused by such breach. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex.1998). Duty is the threshold issue. *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex.1999). Whether the defendant owed a duty to the plaintiff is a question of law for the court to decide from the particular facts of the case. *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 289 (Tex.1996).

In Texas, there is no general legal duty to avoid negligently inflicting mental anguish. *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex.1993). While negligently inflicted mental anguish may be an element of recoverable damages when the defendant breaches some other duty, "[f]or

1. Texas law permits the removal of corneal tissue without the family's consent, but with the permission of the justice of the peace or the Medical Examiner where (1) the decedent from whom the tissue is to be removed died under circumstances requiring an inquest by the justice of the peace or medical examiner; (2) no objection by anyone listed in section 693.013 is known by the justice of the peace or medical examiner; and (3) the removal of the corneal tissue will not interfere with a subsequent investigation or autopsy or alter the decedent's postmortem facial appearance. Tex. Health & Safety Code Ann. § 693.012 (Vernon 1992).

2. The Perrys also brought claims for negligence per se, conversion, and mutilation of a corpse, which were not submitted to the jury.

3. The Perrys do not appeal the jury's finding against them on intentional infliction of emotional distress.

many breaches of legal duties, even tortious ones, the law affords no right to recover for resulting mental anguish." *City of Tyler v. Likes*, 962 S.W.2d 489, 494 (Tex.1997). A plaintiff may recover for mental anguish where his damages are caused by the defendant's breach of some other legal duty. *Boyles*, 855 S.W.2d at 597. Accordingly, mental anguish damages are recoverable in a limited set of circumstances: (1) the foreseeable result of a breach of duty arising out of certain special relationships; (2) common law torts involving intentional or malicious conduct; and (3) personal injury cases where the defendant's conduct causes serious bodily injury. *Verinakis v. Medical Profiles, Inc.*, 987 S.W.2d 90, 95 (Tex.App.—Houston [14th Dist.] 1998, pet. denied) (citing *Likes*, 962 S.W.2d at 494–96). In the absence of one of the three above-described situations, the recovery of mental anguish damages may be recovered in wrongful death and bystander actions. *Id.* (citing *Likes*, 962 S.W.2d at 496).[4]

The Perry's contend they may recover mental anguish damages based on a special relationship and as bystanders. We will examine each contention.

## A. Special Relationship

The Perrys claim they have a special relationship with the Eye Bank giving rise to a duty on the part of the Eye Bank not to negligently inflict mental anguish. The Perrys base their claim of a special relationship on three theories. First, the Perrys assert that if Hernandez, the Eye Bank technician, had properly inquired with the medical examiners' officer as to whether a family member had objected to any tissue and organ donation, as required under Texas law, he would have learned of the Perrys' objection to the removal of Levi's corneal tissue and eyes. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 693.003; 693.012 (Vernon 1992). Second, the Perrys assert that because the Eye Bank has a policy under which it voluntarily undertakes to review all medical documents accompanying a potential donor prior to taking corneal tissue or performing whole eye enucleations, it has a duty not to negligently undertake that review. *See* RESTATEMENT (SECOND) OF TORTS § 324A (1965).[5] Third, the Perrys assert the Texas Penal Code imposes a duty because it provides that a person commits the offense of abuse of a corpse if he intentionally or knowingly "disinters, disturbs, removes, dissects, in

4. The Texas Supreme Court cited a number of specific examples where the plaintiff has been allowed to recover mental anguish damages caused by the breach of some other legal duty. *Boyles*, 855 S.W.2d at 597 (citing *Moore v. Lillebo*, 722 S.W.2d 683 (Tex.1986) (wrongful death); *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369 (Tex.1984) (defamation); *Billings v. Atkinson*, 489 S.W.2d 858 (Tex.1973) (invasion of privacy); *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex.1967) (battery); *Fisher v. Coastal Transp. Co.*, 149 Tex. 224, 230 S.W.2d 522 (1950) (physical injury); *Stuart v. Western Union Tel. Co.*, 66 Tex. 580, 18 S.W. 351 (1885) (failure of telegraph company to timely deliver death message); *Pat H. Foley & Co. v. Wyatt*, 442 S.W.2d 904 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.) (negligent handling of a corpse)).

5. Section 324A of the Restatement (Second) of Torts provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 324A.

whole or in part, carries away, or treats in a seriously offensive manner a human corpse." TEX. PEN.CODE ANN. § 42.08(a)(1) (Vernon 1994).

 Certain relationships may give rise to a duty, which, if breached, would support mental anguish damages; however, there must be a "specific duty of care that, under the law, arises from the relationship." *Boyles,* 855 S.W.2d at 600. Most legal and personal relationships do not create a duty to avoid causing mental anguish. *Likes,* 962 S.W.2d at 496. "Special relationship" cases have three common elements: (1) a contractual relationship between the parties, (2) a particular susceptibility to emotional distress on the part of the plaintiff, and (3) the defendant's knowledge of the plaintiff's particular susceptibility to the emotional distress based on the circumstances. *Johnson v. Standard Fruit & Vegetable Co.,* 984 S.W.2d 633, 638 (Tex.App.—Houston [1st Dist.] 1997), *rev'd on other grounds,* 985 S.W.2d 62 (Tex.1998). In this case, the Perrys cannot establish the first element of a special relationship giving rise to a duty not to negligently inflict mental anguish because there is no contractual relationship between the Perrys and the Eye Bank.

Seeking to avoid the contractual element of a special relationship, the Perrys contend this Court's decision in *Pat H. Foley & Co. v. Wyatt* does not stand for the proposition that next of kin seeking recovery of damages resulting from mutilation of a corpse must prove the existence of a contract as a prerequisite to recovery. 442 S.W.2d 904 (Tex.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.). We disagree with the Perrys' interpretation of that case. In *Pat H. Foley & Co.,* the mother of the decedent, alleged the funeral home did not properly perform its contract for embalming, burial, and funeral services, and was negligent in preparing, embalming, preserving, and protecting her son's body for burial. *Id.* at 905. This Court stated the general rule that the plaintiff cannot recover damages for mental anguish in the absence of physical harm to the plaintiff. *Id.* at 906. The Court, however, noted an exception to the general ruled applicable to the facts of the case before it. *Id.* It specifically found the parties in the case were not strangers to each other, but rather their relationship was *contractual* and, therefore, the *plaintiff's claim for mental anguish was not based solely in negligence. Id.* Unlike *Pat H. Foley & Co.,* there is no contract in this case between the Perrys and the Eye Bank and, therefore, the Perrys' mental anguish claim is grounded solely in negligence.

The Texas Supreme Court has permitted recovery for mental anguish as the foreseeable result of a breach of duty arising out of certain special relationships. These include the physician-patient relationship because most physicians' negligence also causes bodily injury. *Likes,* 962 S.W.2d at 496. The supreme court has also permitted mental anguish compensation in special relationships involving "a very limited number of *contracts* dealing with intensely emotional noncommercial subjects such as preparing a corpse for burial or delivering news of a family emergency." *Id.* (citations omitted) (emphasis added). We conclude, based on *Likes* and *Pat H. Foley & Co.,* recovery for mental anguish damages in this intensely emotional noncommercial transaction involving Levi must have as its basis a contractual relationship.

In the absence of a contractual relationship, the Perrys cannot establish their mental anguish claim is a foreseeable result of a breach of a duty arising out of a special relationship with the Eye Bank. The Perrys' claim is based solely in negligence, and the Perrys were strangers as to

the Eye Bank. Whatever the nature of the relationship between the Perrys and Eye Bank was, it did not rise to the level of a special relationship. Because none of the theories put forth by the Perrys establish a special relationship with the Eye Bank justifying the mental anguish damages awarded by the jury, we will examine the second argument proffered by the Perrys to support the mental anguish damage awards.

## B. Bystander

The Perrys also contend they can recover mental anguish damages as bystanders. We disagree. Bystanders may recover mental anguish damages suffered as a result of witnessing a serious or fatal accident involving a close family member. *Likes,* 962 S.W.2d at 496; *Boyles,* 855 S.W.2d at 597. To recover as a bystander, the plaintiff must establish:

> (1) The plaintiff was located near the scene of the accident, as contrasted with one who was a distance away from it;
> (2) The plaintiff suffered shock as a result of a direct emotional impact upon the plaintiff from a sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and
> (3) The plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*United Servs. Auto. Ass'n v. Keith,* 970 S.W.2d 540, 541–42 (Tex.1998) (per curiam). Texas law requires the bystander's presence when the injury occurred and the contemporaneous perception of the accident. *Id.* at 542. None of the Perrys observed the removal of Levi's eyes. We find the bystander theory of recovery is inapplicable to the facts of this case. The Perrys did not witness an accident. Instead, they witnessed Angela Perry's discovery that Levi's eyes were not in his eye sockets, and are ineligible for mental anguish damages as bystanders.

## III. DAMAGES

The Perrys have not established that they can recover mental anguish damages under any theory for the Eye Bank's alleged negligence in removing Levi's eyes without their consent. We, therefore, sustain this issue, and reverse the actual damages awarded the Perrys based on the Eye Bank's alleged negligence. Moreover, absent an award of actual damages from a tort, punitive damages are not available. *Twin City Fire Ins. Co. v. Davis,* 904 S.W.2d 663, 665 (Tex.1995) (stating actual damages sustained from a tort must be proven before punitive damages are available). Texas cases unanimously hold that recovery of actual damages is a prerequisite to receipt of exemplary damages. *Doubleday & Co., Inc. v. Rogers,* 674 S.W.2d 751, 754 (Tex. 1984). Because the Perrys are not entitled to actual damages, they may not recover exemplary damages. Accordingly, we must also reverse the award of exemplary damages.

## IV. CONCLUSION

We hold the Perrys cannot recover any damages from the Eye Bank. Thus, we need not address Eye Bank's remaining issues. Accordingly, we reverse the judgment of the trial court and render judgment that the Perrys take nothing on their claims against the Eye Bank.

SEYMORE, Justice, dissenting.

I respectfully dissent. Our courts have consistently allowed recovery of mental anguish damages for the *negligent* handling of a dead body. *Terrill v. Harbin,* 376 S.W.2d 945, 945–46 (Tex.Civ.App.—Eastland 1964, writ dism'd); *Love v. Aetna Cas. & Sur. Co.,* 99 S.W.2d 646, 650 (Tex. Civ.App.—Beaumont 1936) (any interfer-

ence with next-of-kin's right to preserve and bury the body by mutilating it is a wrong for which the family can maintain a cause of action for damages, *aff'd*, 132 Tex. 280, 121 S.W.2d 986 (1938); *Burnett v. Surratt*, 67 S.W.2d 1041, 1042 (Tex.Civ. App.—Dallas 1934) writ ref'd) (the right to bury a corpse and preserve its remains is a legal right recognized by the courts); *see also St. Elizabeth Hosp. v. Garrard*, 730 S.W.2d 649, 654 (Tex.1987) (Spears, J., concurring) ("This state has long recognized that establishing the mishandling of a corpse and establishing a feeling of closeness or love between the deceased and the one asking for damages is sufficient for a jury to consider mental anguish.").[1] Moreover, the Texas legislature prescribed criminal penalties for mutilation of a corpse. TEX. PENAL CODE ANN. § 42.08 (Vernon 1994).

The majority correctly states that there is no general duty in Texas to avoid negligently inflicting mental anguish. *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex.1993). However, the supreme court in *Boyles* recognized that its holding "does not affect a claimant's right to recover mental anguish damages caused by [a] defendant's breach of some other legal duty." *Id.* at 597. As a specific example of breach of "some other duty" for which mental anguish damages are still available, the supreme court listed "negligent handling of a corpse." *Id.*

In *City of Tyler v. Likes*, the supreme court revisited the issue of recovery of mental anguish damages and stated that "most relationships, whether legal or personal, create no duty to avoid causing mental anguish." 962 S.W.2d 489, 496 (Tex.

1997). It identified three areas in which mental anguish damages are generally recoverable: 1) common law torts involving intentional or malicious conduct; 2) personal injury cases based upon negligence where there is bodily injury; and 3) foreseeable results of breach of duties arising from certain special relationships. *Id.* at 495–96. The supreme court gave as an example of such a special relationship "a very limited number of contracts dealing with intensely emotional noncommercial subjects such as preparing a corpse for burial." *Id.* at 496 (citing *Pat H. Foley & Co. v. Wyatt*, 442 S.W.2d 904 (Tex.Civ. App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.)).

However, I do not believe that the supreme court intended to abrogate, by its citation to *Pat H. Foley & Co.*, the cause of action for negligent handling of a corpse. Nor do I believe the supreme court intended to limit mental anguish damages to those situations in which the deceased's family are in privity with the party who negligently mishandles or mutilates their loved one. There are numerous scenarios in which a party not in privity with a deceased's family could negligently mishandle or mutilate a dead member of the family. For instance, an ambulance or common carrier could neglect to secure a body in transport, resulting in the body being damaged. A vehicle transporting a dead body could collide with a negligent third party. The majority failed to acknowledge case precedent in which the defendant and the deceased's family were not in privity. *See, e.g., Terrill*, 376 S.W.2d at 945 (doctor's autopsy of de-

---

**1.** The majority opinion in *Garrard* was overruled by the supreme court in *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex.1993), to the extent the opinion could be construed as establishing a general duty to avoid negligent infliction of emotional distress. The *Boyles* supreme court overruled *Garrard* rather than "limiting

the case to its facts ... or pretending that the concurring opinion was in fact the rationale of the majority." *Id.* I cite the concurrence in *Garrard*, which the supreme court mentions favorably in *Boyles*, for the proposition that Texas has long recognized a cause of action for negligent mutilation of a corpse.

ceased exceeded consent of widow, who permitted incision only through existing surgical scar, not incision from shoulder to pelvis); *Classen v. Benfer*, 144 S.W.2d 633, 635 (Tex.Civ.App.—San Antonio 1940, writ dism'd judgm't cor.) (family sued purchaser of land on which their loved one was buried when purchaser moved the body to another tract of land); *Love*, 99 S.W.2d at 646 (insurance company defendant wrongly persuaded a county justice of the peace to order an autopsy on its insured).

In *Likes*, the supreme court makes no pretension of a bright-line rule: "[our] analysis is far from exhaustive, for the law of mental anguish damages is rooted in societal judgments . . . about the gravity of certain wrongs and their likely effects." *Id.* at 496. Further, the supreme court in *Likes* states that it "does not attempt the perhaps impossible task of distilling a unified theory of mental anguish from the existing precedents." *Id.*

Accordingly, I do not agree that the supreme court's analysis in either *Boyles* or *Likes* precludes a cause of action for mental anguish resulting from enucleation of a deceased family member's eyes. I limit my dissent to the issue of whether a cause of action exists; therefore, I have not addressed the other issues presented, including sufficiency of the evidence to support a finding of gross negligence.