Helen ROBINSON, Appellant

v.

UNIVERSITY OF TEXAS MEDICAL
BRANCH AT GALVESTON,
Appellee.

No. 14–03–01400–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 30, 2005.

Martin J. Siegel, Houston, TX, for appellant.

Anne L. Morgan, Austin, TX, for appellee.

Panel consists of Justices FOWLER, EDELMAN, and ELLIOTT.*

## MAJORITY OPINION

BRADY G. ELLIOTT, Judge (Assigned).

This suit involves the mishandling of the remains of a deceased. Appellant, Helen Robinson ("Robinson"), appeals an order granting the plea to the jurisdiction of appellee, The University of Texas Medical Branch at Galveston ("UTMB"), wherein the trial court concluded that Robinson's claims sound in contract, not tort; consent for suit was not obtained, and thus, UTMB retains sovereign immunity from suit; and Robinson did not avail herself of her administrative remedies prior to suit, thus, preventing her from prosecuting her suit against UTMB.

Robinson contends in three issues that (1) UTMB's failure to properly return her husband's remains constitutes a tort aris-

---

* The Honorable Brady G. Elliott, Judge of the 268th District Court of Fort Bend County, sitting by assignment pursuant to TEX. GOV'T CODE ANN. § 74.003(h) (Vernon 2005).

ing from a duty to properly handle human remains; (2) the use of a body to train medical students constitutes the "use of property" such as to waive sovereign immunity; and (3) UTMB's failure to return her husband's body constitutes a breach of contract, and, thus, the waiver provisions of the Texas Tort Claims Act[1] provide her relief from UTMB's immunity claims. We affirm.

## BACKGROUND

Helen Robinson filed suit against UTMB for the mishandling of the remains of her deceased husband, Ray Robinson. Mr. Robinson donated his body to the Anatomical Board of the State of Texas with arrangements for disposition to be made by UTMB under the "UTMB Willed–Body Program."[2] Prior to his death, he executed a document entitled "Will Form" which provided, among other provisions, for the cremation of his body on final disposition. By handwritten annotation, Mr. Robinson directed that after cremation his body be returned to his family. The agreement also contained an express relinquishment of rights and claims for liability against the Anatomical Board of the State of Texas and the receiving institution.

Mr. Robinson's body was delivered to UTMB upon his death. Later, Robinson received notification from UTMB that it was unable to return her husband's ashes as the ashes were commingled with other donors' ashes.

Robinson filed suit asserting a breach of contract claim, negligence, gross negligence for mental anguish, negligent supervision and constructive fraud. UTMB filed a plea to the jurisdiction alleging sovereign immunity, lack of legislative consent to sue, and that the suit fell outside the Texas Tort Claims Act as the body was not personal property. The plea to the jurisdiction was granted by the trial court.

## STANDARD OF REVIEW

A governmental unit is immune from suit and liability unless the state has granted consent. *Dallas Area Rapid Transit v. Whitley,* 104 S.W.3d 540, 542 (Tex.2003). A governmental entity's immunity from suit defeats a court's subject matter jurisdiction. *Id.* Thus, in a suit against a governmental unit, a plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a waiver of that immunity. *See id.* In determining whether a plaintiff has met this burden in a plea to the jurisdiction based on sovereign immunity, we look to the facts alleged by the plaintiff and the evidence relevant to the jurisdictional issue to determine whether the claim comes within a waiver of immunity. *Id.* In this case, it is undisputed that UTMB is a governmental unit and shares this governmental immunity. *See Lowe v. Tex. Tech Univ.,* 540 S.W.2d 297, 298 (Tex. 1976).

## BREACH OF CONTRACT CLAIM

Robinson, in her third issue, argues that UTMB violated the agreement by not returning her husband's remains. She further argues that UTMB is not immune from suit for breach of contract by reason of sovereign immunity because of the performance by Robinson of the terms of the agreement. In response, UTMB argues that Robinson cannot prevail because the state did not consent to the suit.

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001–.109 (Vernon 1997 & Supp.2004–05) (hereinafter "Texas Tort Claims Act.")

2. Authorization for the receipt of bodies is through the Anatomical Board of the State of Texas. TEX. HEALTH & SAFETY CODE ANN. § 691.028 (Vernon Supp.2004–05).

When the state contracts with a private party, it thereby waives immunity from liability, but not from suit, which can only be waived by express consent of the legislature. *See Catalina Dev., Inc. v. County of El Paso,* 121 S.W.3d 704, 705 (Tex.2003). For the legislature to waive the state's sovereign immunity, a statute or resolution must contain a clear and unambiguous expression of the legislature's waiver of immunity. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 696 (Tex.2003).

For agreements entered into between the state and an individual, such as this one, after August 30, 1999, Chapter 2260 of the Texas Government Code provides the exclusive and required method for resolving breach of contract suits. Tex. Gov't Code Ann. § 2260.005 (Vernon Supp.2004–05); *Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 597 (Tex.2001), *overruled on other grounds by Texas Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217 (Tex.2004). Compliance with Chapter 2260 is necessary before a party can sue the state for breach of contract. *Texas Dep't of Transp. v. Aer–Aerotron, Inc.,* 39 S.W.3d 220, 221 (Tex.2001). Chapter 2260 provides an administrative process for the resolution of written contract claims against the state arising from the sale of goods, services, or construction. *See* Tex. Gov't Code Ann. § 2260.001(1) (Vernon 2000); *Little–Tex Insulation Co.,* 39 S.W.3d at 595. Such administrative process requires that written notice be provided to the state within 180 days of the event giving rise to the claim with such notice stating with particularity the nature of the breach, the amount claimed for damages, and the legal theory for the recovery. Tex. Gov't Code Ann. § 2260.051 (Vernon 2000).

Robinson did not plead or prove that she followed these procedures and availed herself of Chapter 2260's exclusive method for resolving breach of contract claims. She further failed to plead or prove that the legislature consented to suit in the form of a statute or resolution. As a result, Robinson's contract claim must fail, and we overrule her third issue.

### Claim Of Sovereign Immunity Waiver

Robinson next contends that UTMB's use of her husband's body to train medical students constitutes "use of tangible personal property" such that the Texas Tort Claims Act's waiver of immunity applies. For use of property to occur under the Texas Tort Claims Act, one must "put or bring" the property into "action or service." *Kerrville State Hosp. v. Clark,* 923 S.W.2d 582, 584 (Tex.1996). "Use" under the Texas Tort Claims Act has been defined to mean "to employ for or apply to a given purpose." *Univ. of Texas Med. Branch v. York,* 871 S.W.2d 175, 178 (Tex.1994). For the property exception to apply, the property must be the instrumentality of the harm. *Texas Dep't of Crim. Justice v. Diller,* 127 S.W.3d 7, 11 (Tex.App.-Tyler 2002, pet. denied). Here, UTMB's use of the body was complete, and the only act remaining was the return of the ashes to Robinson. Return of the ashes was not the intended use of the body; therefore, the Texas Tort Claims Act's waiver provisions do not apply. As a result, this contention fails, and we overrule Robinson's second issue.

### Special Relationship Claim

Robinson contends in her first issue that UTMB's failure to return her husband's remains gives rise to a cognizable tort claim due to the long standing legal duty to properly handle human remains. Texas does not recognize a general

legal duty not to negligently inflict mental anguish damages for such damages are only recoverable for the breach of some other legal duty. *City of Tyler v. Likes*, 962 S.W.2d 489, 494 (Tex.1997); *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex.1993). Robinson asserts that the provisions contained in the enabling statutes permitting the willed body program provide that legal duty.

The Texas Legislature provided for the distribution of cadavers to institutions such as UTMB through the Anatomical Board of the State of Texas ("Anatomical Board"). Tex. Health & Safety Code Ann. § 691.022 (Vernon Supp.2004–05). The Anatomical Board has provided that the dissection of human remains is a special privilege and provided for the return of the remains to the family if so requested. 25 Tex. Admin. Code §§ 479.4, 479.5 (2004).

Robinson urges that these statutory requirements create a "special relationship" which has been recognized by the courts. *Kerr*, 855 S.W.2d at 600. Robinson further argues that this special duty is akin to a fiduciary duty which would remove her claim from immunity from suit. UTMB, on the other hand, urges that there is no recognized cause of action against state entities for which mental anguish damages are recoverable.

 In order for the Texas Tort Claims Act to waive sovereign immunity in limited circumstances, there must already exist a cause of action outside the Texas Tort Claims Act. *Likes*, 962 S.W.2d at 494. However, the Texas Tort Claims Act makes no reference to statutory duties, and there is no pre-existing common law tort duty regarding the handling of willed bodies. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 101.001–.109; *cf. Perry v. S.N.*, 973 S.W.2d 301, 309 (Tex.1998) (refusing to adopt a statutory duty under the Family Code as a duty and standard of conduct in

tort). The existence of statutory duties does not create a special duty cause of action for which mental anguish damages are recoverable. *Cf. Fitzpatrick v. Copeland*, 80 S.W.3d 297, 305 (Tex.App.-Fort Worth, 2002, pet. denied) ("[A] motorist owes no special duty to avoid inflicting mental anguish damages on other users of the highway.").

 Robinson further urges that UTMB's failure to return the body, in accordance with the instructions contained in the contract, creates a breach of a special duty permitting recovery under the Texas Tort Claims Act for mental anguish damages. A claim for mental anguish damages based on a special relationship is not a separate cause of action, but merely an element of recovery for the breach of another legal duty. *Univ. of Tex. Med. Branch at Galveston v. Harrison*, No. 14–02–01276–CV, 2003 WL 21803314, at *3 n. 3 (Tex.App.-Houston [14th Dist.] Aug. 7, 2003, pet. denied). The character of the claim, as between tort and contract, is determined by the source of the duty breached, not whether the breach results from negligence. *Id.* (citing *DeWitt County Elec. Co-op. v. Parks*, 1 S.W.3d 96, 105 (Tex.1999)). Such claim by Robinson would depend upon the existence of a contractual duty which UTMB breached. As the contract spells out the parties' rights concerning the use of the body, the contract would govern the dispute between the parties. *DeWitt*, 1 S.W.3d at 105.

 This special relationship claim asserted by Robinson arises from the contract and not an independent tort action. *Noah v. University of Tex. Med. Branch at Galveston*, No. 01–03–00985, No. 01–03–00986–CV, —— S.W.3d ——, ——, 2004 WL 1794642, at *9 (Tex.App.-Houston [1st Dist.] Aug. 12, 2004, pet. denied); *Taylor v. Anatomical Board of Texas*, 148 S.W.3d

661, 665 (Tex.App.-Beaumont 2004, pet. denied). By entering into a contract the State does not waive its immunity from suit. *Fed. Sign v. Texas S. Univ.*, 951 S.W.2d 401, 408 (Tex.1997), *superseded by statute on other grounds as stated in Little–Tex Insulation Co.*, 39 S.W.3d at 593. By its failure to return the remains, as set forth in the contract, Robinson is asserting a waiver-by-conduct exception to the sovereign-immunity rule. The Texas Supreme Court has expressly declined to adopt such an exception, and we decline to do so here. *See Texas Natural Res. Conservation Comm'n. v. IT–Davy*, 74 S.W.3d 849, 857 (Tex.2002).

As explained above, in this context, breach of contract claims are not actionable against UTMB and cannot promote a cognizable claim for mental anguish damages. UTMB has not waived immunity from suit by contracting with Robinson in this instance, and Robinson has not availed herself of her administrative remedies as provided by the legislature. The legislature has provided that Robinson may pursue her claims through legislative consent, administrative review or resolution of the legislature. *See id.* at 860. Robinson has, however, sought judicial review, and the law does not favor her in this regard, and her claim is rejected.

■ Robinson further argues that UTMB is liable to her for its negligent supervision of the Willed Body Program, and such failure constitutes a misuse of tangible property that injured her. She cites *Texas A & M University v. Bishop*, in which the court found that tangible personal property was misused when the university failed to adequately supervise students presenting a drama wherein one of the students was injured by a knife used in the play. 105 S.W.3d 646, 656 (Tex.App.-Houston [14th Dist.] 2002), *rev'd*, 156 S.W.3d 580 (Tex.2005). However, the Tex-

as Supreme Court in reversing *Bishop*, found that the faculty sponsors, and their employer, Texas A & M University, did not "use" the personal property and thus did not waive immunity. *See Bishop*, 156 S.W.3d at 583–84. As we have found that the intended use of the body had been completed, there was no use of property that would fall under the limited waivers of the Texas Tort Claims Act. Thus, there can be no negligent supervision constituting a misuse of tangible property, and this claim fails.

■ Robinson next claims constructive fraud against UTMB for UTMB's breach of its special duty to properly handle willed bodies, i.e. a breach of fiduciary duty. The Tort Claims Act provides for governmental unit liability for personal injury caused by a condition or use of tangible personal property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1997). The claim for constructive fraud does not fall within the Texas Tort Claim Act's limited waiver of immunity; therefore, UTMB retains its immunity. *See City of Fort Worth v. Pastusek Indus., Inc.*, 48 S.W.3d 366, 372 (Tex.App.-Fort Worth 2001, no pet.). As we have already determined that there is no claim for misuse of tangible personal property, this claim must also fail.

In this case, except for the contract claim, addressed previously, Robinson alleges no cause that would defeat the sovereign immunity enjoyed by UTMB. All the remaining causes allege a special relationship cause of action against UTMB arising out of the willed donor contract. We conclude the special relationship cause of action sounds in contract, and we have found no Texas case law supporting a tort duty owed to Robinson. Therefore, we overrule Robinson's first issue.

Accordingly, we affirm the judgment of the trial court.

FOWLER, J., concurring.

WANDA McKEE FOWLER, Justice, concurring.

I concur in the result the majority reaches but I disagree with the court's resolution of all the claims alleged in Mrs. Robinson's petition except for the breach of contract and special relationship claims.[1] Mrs. Robinson's petition alleged claims for traditional negligence, gross negligence, negligent supervision, negligence per se, special relationship, and constructive fraud. In each but the special relationship claim, the majority finds Mrs. Robinson cannot pursue these claims because she has not alleged a use of tangible personal property for which the Texas Tort Claims Act waives immunity.[2] I would hold that Mrs. Robinson could not pursue these claims because the remaining claims, although pleaded as tort claims, are all contractually based and thus subject to Chapter 2260's administrative prerequisites.[3]

## The Texas Tort Claims Act Only Waives Immunity for Certain Tort Claims

A plaintiff wishing to avail himself of the Texas Tort Claims Act's waiver of sovereign immunity must clear two hurdles. First, the plaintiff must plead a legally cognizable tort cause of action. This is because the Texas Tort Claims Act does not create a cause of action; the Act only waives the state's sovereign immunity in limited situations. *City of Tyler v. Likes*, 962 S.W.2d 489, 494 (Tex.1997); *Seamans v. Harris County Hosp. Dist.*, 934 S.W.2d 393, 395 (Tex.App.-Houston [14th Dist.] 1996, no writ). And second, the plaintiff's claim must be one for which the legislature has waived liability.[4] TEX. CIV. PRAC. & REM.CODE § 101.021 (specifying the types of tort claims for which a state governmen-

1. I agree with the majority's conclusions that (1) Mrs. Robinson cannot proceed with her claims because UTMB has not waived its sovereign immunity; (2) the trial court properly granted UTMB's plea to the jurisdiction; and (3) Mrs. Robinson could not proceed with her breach of contract claim because the failure to comply with Chapter 2260's administrative prerequisites has foreclosed that avenue of recovery.

2. The majority holds that Mrs. Robinson has not alleged a use because the only intended use of the body was as a cadaver; once that use was completed there could be no further use. Their contract specifically stated that the body's ashes should be returned to the family. I believe that UTMB's improper "use" of the ashes by mingling them with the ashes of other donated bodies qualifies as a use of tangible personal property. But, even though Mrs. Robinson may have alleged a use under the Act, she still cannot prevail over the plea to the jurisdiction for the reasons listed *infra*.

3. The majority holds that Mrs. Robinson cannot pursue her special relationship claim for this very reason. I agree with the majority's reasoning and result with respect to the special relationship claim. However, I believe that all of Mrs. Robinson's other claims are subject to the same analysis.

4. The Texas Tort Claims Act waives immunity in two situations, stating:

> A governmental unit in the state is liable for:
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> (B) the employee would be personally liable to the claimant according to Texas law; and
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE § 101.021(1).

tal unit is liable). If, as in Mrs. Robinson's case, the plaintiff has not alleged a cognizable tort cause of action, the Tort Claims Act cannot waive the state's immunity, even if the plaintiff could satisfy the other requirements.

**The Texas Tort Claims Act Does Not Apply Because Mrs. Robinson's Claims are Contractually Based**

Mrs. Robinson's claims, although pleaded as tort causes of action, are in fact, all contractually based. All of Mrs. Robinson's claims stem from UTMB's failure to use Mr. Robinson's body for medical research and then to return his ashes to his family as promised. Because the only duties UTMB owed to the Robinsons arise from the parties' contract, I would conclude that all of Mrs. Robinson's claims are contractually-based.

### 1. Determining the source of UTMB's duties

As mentioned above, Mrs. Robinson alleged a negligence claim, a gross negligence claim, negligent supervision, negligence per se, a special relationship claim, and constructive fraud. We determine whether a claim sounds in tort or contract by looking to the source of the legal duty. *See DeWitt County Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 105 (Tex.1999); *Univ. of Tex. Med. Branch at Galveston v. Harrison*, No. 14–02–01276–CV, 2003 WL 21803314, *3 (Tex.App.-Houston [14th Dist.] Aug. 7, 2003, pet. denied). If the parties would owe no duties to one another but for the contract, the claim is contractually based. *Harrison*, 2003 WL 21803314 at *3 ("[I]f the defendant's conduct would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.") (citing *DeWitt*, 1 S.W.3d at 105). But, if the parties would owe duties to one another even in the absence of a contract, the claim sounds in tort. *Id.* ("Where a defen-

dant's conduct would give rise to liability independent of the fact that a contract exists . . . the plaintiff's claim may also sound in tort.") (citing *DeWitt*, 1 S.W.3d at 105). Thus, I would first determine whether each of Mrs. Robinson's claims sounds in tort, so that the Tort Claims Act might apply, or in contract, so that Chapter 2260 might apply.

### 2. The negligence claims

In her negligence claims, Mrs. Robinson alleges UTMB had a duty to use her husband's body only for medical research and to return her husband's ashes to the family. These duties clearly arise from the Willed Body Form that Mr. Robinson signed. This contract outlined and limited the duties UTMB owed to Mr. and Mrs. Robinson. In the absence of the parties' contractual agreement for the donation of Mr. Robinson's body for specified purposes and UTMB's return of the body to his family, UTMB would owe no duty to the Robinsons to use his body for medical research or to ensure the return of his ashes to the family. *Accord, Harrison*, 2003 WL 21803314, at *3 ("Apart from the duties created by [the willed body form], appellees have not cited and we have not found, any Texas case law recognizing a tort duty that UTMB owed to them and allegedly breached."). Thus, even though Mrs. Robinson called her claims negligence claims, at their heart, they are contractual and complain of the breach of the parties' agreement.

### 3. The special relationship claim

I also would find that Mrs. Robinson's special relationship claim is contractually based. A special relationship claim requires (1) a contractual relationship between the parties; (2) the plaintiff's particular susceptibility to emotional distress; and (3) the defendant's knowledge of the plaintiff's particular susceptibility based on

the circumstances. *Lions Eye Bank of Tex. v. Perry,* 56 S.W.3d 872, 877 (Tex. App.-Houston [14th Dist.] 2001, pet. denied) (citing *Johnson v. Standard Fruit & Vegetable Co.,* 984 S.W.2d 633, 638 (Tex. App.-Houston [1st Dist.] 1997), *rev'd on other grounds,* 985 S.W.2d 62 (Tex.1998)). The contract itself is the basis of the duty to a deceased's family to properly handle the deceased's remains. *See Pat H. Foley & Co. v. Wyatt,* 442 S.W.2d 904, 906 (Tex. Civ.App.-Houston [14th Dist.] 1969, writ ref'd n.r.e.) (finding that the plaintiff's "basic allegation is that the defendant failed to perform according to its contractual responsibility"). In the absence of a contractual relationship, a plaintiff cannot maintain a special relationship claim. *Lions Eye Bank,* 56 S.W.3d at 877 (finding plaintiffs were precluded from establishing the defendant owed them a duty not to negligently inflict mental anguish because there was no contractual relationship). Because a special relationship claim arises solely from the parties' contractual relationship, Mrs. Robinson's special relationship claim is also contractually based.

### 4. *The constructive fraud claim*

And finally, I would find that the constructive fraud claim is contractually based. Constructive fraud is the breach of a legal or equitable duty which the law declares fraudulent because it violates a fiduciary relationship. *Jean v. Tyson–Jean,* 118 S.W.3d 1, 9 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (citing *Archer v. Griffith,* 390 S.W.2d 735, 740 (Tex. 1964)). Mrs. Robinson alleges UTMB committed a constructive fraud by not returning her husband's ashes to her after using his body for medical research. Here, as with the other claims, the source of these duties was the contract between the parties. Mrs. Robinson has not provided any Texas authority for finding that UTMB owed other legal or equitable

duties to her husband or to her. Therefore, the constructive fraud claim, like the others, is also contractually based.

### Conclusion

Because all of Mrs. Robinson's claims are contractually based, she was required to satisfy Chapter 2260's administrative prerequisites to proceed with her claim against UTMB. Because she has not done so, I would hold that UTMB has not waived its sovereign immunity and the trial court properly granted UTMB's plea to the jurisdiction.

