Cody NELSON, Appellant

v.

SCI TEXAS FUNERAL SERVICES, INC., Appellee

No. 11–13–00334–CV

Court of Appeals of Texas, Eastland.

Opinion filed January 29, 2016

John Robert Howie Jr., Dallas, for Appellant.

Richard B. Phillips, Jr., David C. Schulte and Matthew Mitzner, Thompson & Knight, L.L.P., Dallas, for Appellee.

Panel consists of: Wright, C.J., Willson, J., and Bailey, J.

## OPINION

JOHN M. BAILEY, JUSTICE

Cody Nelson appeals the trial court's final judgment that granted SCI Texas Funeral Services, Inc.'s motion for summary judgment on a no-evidence ground and a traditional ground raised by SCI. As per the terms of the final judgment, these grounds were dispositive of Nelson's suit because they negated his claims for mental anguish damages, the only damages he sought. In one issue on appeal, Nelson contends that the trial court erred when it granted SCI's motion for summary judgment on his claims seeking mental anguish damages. We reverse and remand.

## Background Facts

This is a negligence suit against a funeral home (SCI) concerning the manner in which it handled the funeral arrangements for Nelson's deceased mother. Sharlene Rene Lobban passed away unexpectedly in October 2007. Lobban had two children at the time of her death. Nelson was Lobban's only adult child. Nelson resided in Arizona, but none of Lobban's other relatives had current contact information for him.

After Lobban's death, her adult siblings contacted SCI to make arrangements for her funeral. They requested SCI to cremate Lobban. SCI attempted to contact Nelson but could not locate him. In his absence, SCI followed the directions of Lobban's siblings by cremating her body. Lobban was cremated less than two days after she died. SCI delivered the remains to Lobban's siblings, and they scattered the remains, per Lobban's wish, at the cemetery where her parents were buried. Nelson was not located until after SCI had given Lobban's remains to her siblings and her siblings had already scattered her remains.

Nelson filed suit against SCI, alleging that the funeral home violated the Texas Health and Safety Code's provisions for the disposition of a decedent's remains by acting without his participation. *See* TEX. HEALTH & SAFETY CODE ANN. § 711.002 (West Supp.2015) (providing statutory guidelines for the disposition of remains and the duty to inter). There is no dispute that, under this statute, Nelson had priority over Lobban's adult siblings to control the disposition, including cremation, of Lobban's body. *Id.* Nelson sought mental anguish damages under several theories of liability premised upon SCI's alleged violation of Section 711.002.[1] Specifically, he asserted causes of action based upon negligence per se, negligent breach of a special relationship, and negligent mishandling of a corpse. He also asserted a claim for gross negligence. Nelson does not assert that he would have selected a different disposition of his mother's body other than cremation. Furthermore, he does not assert that SCI deficiently performed its services other than acting without his participation.

SCI's motion for summary judgment contained the following grounds pertaining to Nelson's claim for mental anguish damages:

1. ***NO–EVIDENCE GROUND***: Mr. Nelson's negligent-breach-of-a-special-relationship claim fails as a matter of law and should be dismissed because there is no evidence that a special relationship existed.

2. ***TRADITIONAL GROUND***: Mr. Nelson's request for mental-anguish damages fails as a matter of law and should be dismissed because mental-anguish damages are not available under the facts he has pleaded.[2]

---

1. Section 711.002(a–1) sets out a procedure whereby a person's right to control the disposition of the decedent's remains terminates ten days after the decedent dies by virtue of a statutory presumption that the person is unable or unwilling to act. We note that this provision of the statute was added in 2011, four years after Lobban's death. Act of May 17, 2011, 82d Leg., R.S., ch. 532, §§ 2, 17, 2011 Tex. Gen. Laws 1311, 1318. Accordingly, the version of the statute in existence at the time of Lobban's death did not contain a mechanism whereby Nelson's right to control the disposition of her remains would terminate after the passage of the specified number of days.

2. SCI's motion for summary judgment also contained a third ground concerning Nelson's claim for mental anguish. The third ground is not relevant to our analysis because the trial court did not grant summary judgment on this ground.

As noted above, the no-evidence ground only addressed Nelson's claim for negligent breach of a special relationship. SCI expressly premised the no-evidence ground on the holding in *Lions Eye Bank of Texas v. Perry*, 56 S.W.3d 872, 877 (Tex.App.–Houston [14th Dist.] 2001, pet. denied). SCI cited *Lions Eye Bank* for the proposition that a next of kin seeking mental anguish damages for negligent breach of a special relationship relating to the handling of a corpse must prove the existence of a contractual relationship as a prerequisite to recovery. *See* 56 S.W.3d at 877. In reliance upon this contention, SCI asserted that Nelson had no evidence of a special relationship warranting mental anguish damages because there was no evidence of a contractual relationship between Nelson and SCI.

SCI's traditional summary judgment ground built upon the no-evidence ground by asserting that, without a contractual relationship that SCI breached with Nelson, all of his claims seeking mental anguish damages fail as a matter of law because there was no evidence that he suffered a physical injury. In other words, SCI asserted that, in the absence of a physical injury, Nelson could not recover mental anguish damages under any theory he asserted unless he established a negligence claim for breach of a special relationship.

The trial court granted SCI's motion for summary judgment on the two grounds referenced above. The trial court, in its final judgment, further noted that Nelson sought only mental anguish damages in his suit against SCI. Accordingly, these rulings by the trial court on SCI's motion for summary judgment were dispositive of Nelson's claims.

### Analysis

In a single issue on appeal, Nelson challenges the trial court's summary judg-ment. He contends that the trial court erred in determining that he could not recover mental anguish damages because he was not in contractual privity with SCI. Nelson does not assert that there was any contractual privity between himself and SCI. In this regard, the underlying facts largely are not in dispute. Instead, Nelson challenges the application of the holding of our sister court in *Lions Eye Bank* to the facts in this suit. He contends that a special relationship to support a recovery of mental anguish damages does not require contractual privity between him and SCI.

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex.2010). As set out above, SCI moved for summary judgment on the issue of Nelson's mental anguish damages on both no-evidence and traditional grounds. *See* Tex.R. Civ. P. 166a(c), 166a(i). When a party moves for summary judgment on both no-evidence and traditional grounds, the appellate court should address the no-evidence grounds first. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex.2013).

After adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex. R.App. P. 166a(i). A no-evidence summary judgment motion under Rule 166a(i) is essentially a motion for a pretrial directed verdict; it requires the nonmoving party to present evidence raising a genuine issue of material fact supporting each element contested in the motion. Tex.R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex.2009); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex.2006). When reviewing a no-evidence

summary judgment, we "review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Timpte Indus.*, 286 S.W.3d at 310; *Mack Trucks*, 206 S.W.3d at 582 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex.2002)).

■ The standard of review set out in the preceding paragraph is the one that we would ordinarily apply in reviewing a no-evidence summary judgment. However, SCI's no-evidence ground pertaining to Nelson's claim for mental anguish damages is not an ordinary no-evidence ground because it is premised on a legal contention concerning the law applicable to Nelson's claim. In support of its no-evidence ground, SCI asserted that the holding in *Lions Eye Bank* sets out the controlling law applicable to this case and that, under that holding, Nelson had no evidence of a special relationship because he had no evidence of a contractual relationship between himself and SCI. In the context of Rule 166a(i), SCI's no-evidence motion for summary judgment presents a legal question of whether or not contractual privity is an "essential element" of Nelson's claim.

We addressed a similar situation in dealing with a no-evidence motion for summary judgment in *Cone v. Fagadau Energy Corp.*, 68 S.W.3d 147 (Tex.App.–Eastland 2001, pet. denied). We stated in *Cone*:

> [T]he court must determine the law which is applicable to the case with respect to any no-evidence motion for

summary judgment in order to determine if the summary judgment evidence raises a genuine issue of material fact. The fact that a dispute exists with respect to the applicable law does not prevent the court from performing its function of analyzing the non-movant's evidence to determine if it raises a fact issue.

68 S.W.3d at 156 n. 4. Other courts have not taken this approach. They have concluded that a question of law is not a proper subject of a no-evidence motion for summary judgment. *See In re Estate of Allen*, 301 S.W.3d 923, 929–30 (Tex.App.–Tyler 2009, pet. denied); *Harrill v. A.J.'s Wrecker Serv., Inc.*, 27 S.W.3d 191, 194 (Tex.App.–Dallas 2000, pet. dism'd w.o.j.).

■ SCI initially contends that Nelson has waived his contention that contractual privity is not required to establish his claim for mental anguish damages. SCI bases this contention on the fact that Nelson did not include this argument in his written response to the no-evidence motion for summary judgment. We disagree. In his written response to SCI's no-evidence motion for summary judgment, Nelson asserted that "[t]he Court has already ruled that there are genuine issues of material fact concerning whether or not the Defendant breached a duty created by a special relationship" when the trial court granted his previously filed traditional motion for summary judgment. He additionally incorporated "all of the summary judgment evidence and arguments" that he made in his traditional motion for summary judgment. Nelson asserted in his traditional motion for summary judgment that contractual privity was not required in order for a special relationship to exist between himself and SCI.[3]

---

3. Nelson additionally asserted this legal contention during oral argument at the subsequent hearing on SCI's no-evidence motion for summary judgment.

■ Moreover, a nonmovant who fails to file a response to a no-evidence motion for summary judgment and produce evidence may still argue on appeal that the motion is insufficient as a matter of law. *Viasana v. Ward Cty.*, 296 S.W.3d 652, 654–55 (Tex. App.–El Paso 2009, no pet.) (citing *Roventini v. Ocular Sciences, Inc.*, 111 S.W.3d 719, 723 (Tex.App.–Houston [1st Dist.] 2003, no pet.)). Nelson is essentially asserting that SCI's no-evidence motion for summary judgment is insufficient as a matter of law by asserting that contractual privity is not an essential element of his claim for mental anguish damages. Therefore, we will address the merits of Nelson's legal argument on appeal to determine if the holding in *Lions Eye Bank* sets out the controlling law applicable to Nelson's claim. This is a question of law that we review de novo. *See Wooley v. Schaffer*, 447 S.W.3d 71, 75 (Tex.App.–Houston [14th Dist.] 2014, pet. denied).

In *Lions Eye Bank*, Levi V. Perry Jr. was killed while he was jogging. 56 S.W.3d at 874. His father subsequently signed a "Harris County Hospital District Consent for Postmortem Procedures" form, refusing all organ and tissue donation. *Id.* During the viewing of the body at the funeral home, Levi's sister, who was an ophthalmologist, noticed that Levi's eyelids did not look normal. *Id.* Upon examination, she discovered that his entire eyes had been removed from the sockets. *Id.*

The Perrys sued Lions Eye Bank for negligence, gross negligence, and intentional infliction of emotional distress. *Id.* at 875. They sought mental anguish and punitive damages. *Id.* The jury found that the eye bank had negligently removed Levi's eyes, and it awarded mental anguish damages to the Perrys. *Id.* The eye bank appealed the judgment based on the argument that the Perrys could not recover for the negligent infliction of mental anguish. *Id.* In a 2–1 decision, the Fourteenth Court of Appeals determined that the Perrys could not recover under a "special relationship" theory of recovery because there was no contractual relationship between the Perrys and the eye bank. *Id.* at 877.

■ The court in *Lions Eye Bank* traced the development of the law in Texas pertaining to the claims alleging negligent infliction of mental anguish. *Id.* at 875–76. As noted by the court, in order to prevail on a cause of action for negligence, the plaintiff must satisfy three elements: (1) a legal duty owed by the defendant to the plaintiff; (2) breach of that duty; and (3) damages proximately caused by such breach. *Id.* at 875 (citing *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998)). Duty is the threshold issue. *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999). Whether the defendant owed a duty to the plaintiff is a question of law for the court to decide from the particular facts of the case. *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 289 (Tex. 1996).

The majority opinion in *Lions Eye Bank* focused extensively on two significant opinions from the Texas Supreme Court to resolve the question of duty. 56 S.W.3d at 875–76. The supreme court determined in *Boyles v. Kerr*, 855 S.W.2d 593, 594–97 (Tex.1993), that there is no general legal duty to avoid negligently inflicting mental anguish. In reaching this holding, the court overruled its earlier decision in *St. Elizabeth Hospital v. Garrard*, 730 S.W.2d 649 (Tex.1987), to the extent that it created an independent cause of action for negligent infliction of emotional distress. *Boyles*, 855 S.W.2d at 595–97. The court noted in *Boyles* that its decision "does not affect a claimant's right to recover mental anguish damages caused by defendant's breach of some other legal duty." *Id.* at

597. The court then listed several cases wherein courts had permitted a recovery of mental anguish damages, including *Pat H. Foley & Co. v. Wyatt,* 442 S.W.2d 904 (Tex.Civ.App.–Houston [14th Dist.] 1969, writ ref'd n.r.e.), with the parenthetical notation that *Wyatt* had permitted a recovery for mental anguish damages for "negligent handling of corpse." *Id.*[4]

The Texas Supreme Court revisited a claim of negligent infliction of mental anguish in *City of Tyler v. Likes,* 962 S.W.2d 489, 492–93 (Tex.1997). *Likes* involved a suit against a municipality for flood damage. 962 S.W.2d at 492. The property owner sought damages for mental anguish based on flood damage to her home. *Id.* at 492–93. The supreme court held that the property owner could not recover damages for mental anguish arising out of harm to her property. *Id.* at 493.

The court in *Likes* expounded upon its earlier holding in *Boyles* that Texas does not recognize a general legal duty to avoid negligently inflicting mental anguish. *Id.* at 494. The court noted that there are two principal reasons why courts are not willing to recognize mental anguish as a compensable element of damages in every case where it occurs: (1) it is difficult to predict from one person to another, thereby affecting its foreseeability, and (2) its existence is inherently difficult to verify. *Id.* at 494–95. As a result of these considerations, courts have determined "that there are some categories of cases in which the problems of foreseeability and genuineness are sufficiently mitigated that the law should allow recovery for anguish." *Id.* at 495. The court then listed various types of

cases that permit a recovery for mental anguish damages. *Id.* at 495–96.

The court recognized in *Likes* that mental anguish is compensable as the foreseeable result of a breach of duty arising out of "certain special relationships." 962 S.W.2d at 496 (citing *Boyles,* 855 S.W.2d at 600). The court then stated that one of these special relationships is "a very limited number of contracts dealing with intensely emotional noncommercial subjects such as preparing a corpse for burial." *Id.* (citing *Wyatt,* 442 S.W.2d 904). The court noted that most relationships create no duty to avoid causing mental anguish and that there was "no suggestion" of a special relationship in *Likes. Id.*

In *Lions Eye Bank,* the Perrys claimed that they had a special relationship with the eye bank giving rise to a duty not to negligently inflict mental anguish. 56 S.W.3d at 876. Citing *Boyles* and *Likes,* the majority determined that a special relationship did not exist because there was no contractual relationship between the Perrys and the eye bank. *Id.* at 877. In reaching this holding, the majority cited its earlier holding in *Wyatt* that permitted a recovery for the negligent handling of a corpse. *Id.* The majority noted that the mental anguish claim in *Wyatt* was not based solely in negligence, but also upon a contractual relationship. *Id.* As stated by the court in *Wyatt;*

The parties in the instant case were not strangers to each other; their relationship was contractual. While the plaintiff's pleadings additionally allege negligence, an initial basic allegation is

4. It is interesting to note that *Garrard* also involved a claim asserting negligent handling of a corpse. 730 S.W.2d at 650. The plaintiffs in *Garrard* alleged that a hospital negligently disposed of the corpse of their stillborn child without their consent. *Id.* The court in *Boyles* favorably cited the concurring opinion in *Gar-* *rard* for the fact "that the same result could be reached under the traditional Texas rule allowing emotional distress damages arising from the mishandling of a corpse." *Boyles,* 855 S.W.2d at 595 (citing *Garrard,* 730 S.W.2d at 654 (Spears, J., concurring and dissenting)).

that the defendant failed to perform according to its contractual responsibility. This is not a claim for mental anguish founded solely in negligence.

442 S.W.2d at 906. The majority additionally cited the supreme court's language in *Likes* that special relationships involve "a very limited number of *contracts* dealing with intensely emotional noncommercial subjects such as preparing a corpse for burial or delivering news of a family emergency." *Lions Eye Bank*, 56 S.W.3d at 877 (quoting *Likes*, 962 S.W.2d at 496) (internal quotation marks omitted). As stated by the majority in *Lions Eye Bank*, "In the absence of a contractual relationship, the Perrys cannot establish their mental anguish claim is a foreseeable result of a breach of a duty arising out of a special relationship with the Eye Bank." *Id.* The dissenting justice in *Lions Eye Bank* premised his opinion on the principle that courts have consistently allowed recovery of mental anguish damages for the negligent handling of a dead body. *Id.* at 878. He concluded that the supreme court did not intend to abrogate a cause of action for negligent handling of a corpse by its citation to *Wyatt. Id.* at 879.

Similar to the plaintiffs in *Lions Eye Bank*, Nelson contends that he may recover based upon a special relationship between himself and SCI. If we apply the contractual privity requirement of *Lions Eye Bank*, Nelson is precluded from recovering mental anguish damages under a special relationship theory. We conclude that the holding in *Lions Eye Bank* is not applicable to the facts in this case.

A significant component in our analysis is Nelson's status as his deceased mother's next of kin. In *Evanston Insurance Co. v. Legacy of Life, Inc.*, the Texas Supreme

Court recently addressed a claim brought by a surviving daughter against an organ donation charity regarding questions pertaining to insurance coverage. 370 S.W.3d 377, 379 (Tex.2012). In reaching its decision, the supreme court noted that next of kin have a common law right to possess the body of a deceased to bury it. *Id.* at 383 (citing *Regina v. Price*, 12 QBD 247, 252–54 (1884) (Eng.)). The supreme court also cited the Dallas Court of Appeals's opinion in *Burnett v. Surratt*, holding that next of kin have "sort of quasi property" rights in a dead person's body such as the right of possession and control of the burial. 67 S.W.2d 1041, 1042 (Tex. Civ. App.–Dallas 1934, writ ref'd).[5] The supreme court then quoted the following statement from *Culpepper v. Pearl Street Building, Inc.*, 877 P.2d 877, 880 (Colo.1994), as a correct statement of the applicable law:

> Historically, the notion of a quasi-property right arose to facilitate recovery for the negligent mishandling of a dead body. If the plaintiff could show that his property right had been harmed, he would avoid the burden of proving that his emotional distress was accompanied by physical injury.... In reality, however, the primary concern of the right is not the injury to the dead body itself, but whether the improper actions caused emotional or physical pain or suffering to surviving family members. The injury is seldom pecuniary; rather, damages are grounded in the mental and physical injuries of survivors.

370 S.W.3d at 384 (alteration in original) (quoting *Culpepper*, 877 P.2d at 880). The supreme court further stated, "The common law gives [the next of kin] the right to direct the burial, which we have called a quasi-property right. *Burnett*, 67 S.W.2d

---

**5.** In light of *Burnett*'s status as a "writ refused" case, the court in *Evanston Insurance Co.* recognized the holding in *Burnett* as a

holding of the Texas Supreme Court. 370 S.W.3d at 383–84.

at 1042. The common law also allows next of kin to sue for mental anguish damages when acts are performed on a decedent's body or tissues without the next of kin's consent in certain circumstances." *Id.* at 385.

The supreme court's recent statements in *Evanston Insurance Co.* indicate that the legal basis for permitting a next of kin to sue for mental anguish damages for acts performed on a decedent's body without consent of the next of kin arises from a quasi-property right rather than from a contractual right. As noted by the supreme court in *Evanston Insurance Co.,* our court previously recognized the quasi-property right of the next of kin to direct the burial of a deceased in *Terrill v. Harbin,* 376 S.W.2d 945, 947 (Tex.Civ.App.–Eastland 1964, writ. dism'd) (suit by widow against a physician who was alleged to have performed an autopsy on the decedent in excess of the authorization granted by the widow). 370 S.W.3d at 386. In *Terrill,* we agreed with the holding in *Burnett* that a next of kin may sue for damages when someone interferes with the next of kin's right to direct the burial. 376 S.W.2d at 947.

We are mindful that the court in *Wyatt* made reference to the fact that the plaintiff and the defendant funeral home had a contractual relationship. 442 S.W.2d at 906–07. The existence of the contractual relationship strengthened the surviving parent's claim for mental anguish damages from the perspective of foreseeability. *Id.* at 907 (citing *Lamm v. Shingleton,* 231 N.C. 10, 55 S.E.2d 810 (1949)). The court noted that, because of the contractual relationship, the possibility that the widow in *Wyatt* would suffer mental anguish if the contract was not properly performed was a matter contemplated by the parties. *Id.* We do not read *Wyatt* as requiring contractual privity between each surviving

next of kin and a funeral home in order to support a claim for negligent handling of a corpse.

In addition to Nelson's quasi-property right under common law as the next of kin to direct the disposition of his deceased mother's remains, he also possessed a statutory right under the applicable statute that gave him a priority to make the arrangements for her remains. *See* Section 711.002(a). In *Freeman v. Harris County,* the father of a deceased baby sued the county based on the medical examiner's office losing the baby's body after performing an autopsy on it. 183 S.W.3d 885, 887 (Tex.App.–Houston [1st Dist.] 2006, pet. denied). The First Court of Appeals cited *Lions Eye Bank* and its requirement of a contractual relationship in order for a special relationship to exist. *Id.* at 890. However, the court did not follow *Lions Eye Bank*'s requirement of a contractual relationship when it held as follows:

> While there was no "contract" per se, the autopsy of Freeman's baby was statutorily-mandated. Freeman would be particularly susceptible to emotional distress faced with the autopsy of his 27–day–old baby, and Harris County should have known of Freeman's particular susceptibility to the emotional distress, based on the circumstances.
>
> Accordingly, we hold that the County's relationship with Freeman constituted a "special relationship" under which mental anguish damages were allowable in the absence of physical injury.

*Id.* at 890 (citations omitted). Accordingly, the court in *Freeman* relied upon the requirement of a statute to serve as the basis of special relationship.

We conclude that Nelson's common law, quasi-property right as next of kin and his priority right under the statute were sufficient to create a special relationship be-

tween himself and SCI, giving rise to a duty on the part of SCI to avoid causing mental anguish to Nelson. In this regard, SCI was the funeral home that handled the disposition of his mother's remains. Furthermore, there is no dispute that SCI was aware of Nelson's existence and his priority as the next of kin in controlling the disposition of his mother's remains. Thus, Nelson and SCI "were not strangers to each other," unlike the situation where the Perrys and the eye bank were strangers. *Wyatt*, 442 S.W.2d at 906.

Both of the summary judgment grounds that served as the bases for the trial court's final judgment are premised on the legal contention that SCI owed no duty to Nelson to avoid negligently inflicting mental anguish in the absence of contractual privity. We disagree with the trial court's determination of this legal question. Accordingly, the trial court erred in determining that SCI owed no duty to Nelson in the absence of contractual privity. Nelson's sole issue is sustained.

### This Court's Ruling

We reverse the judgment of the trial court, and we remand the cause for further proceedings consistent with this opinion.