YVONNE T. RODRIGUEZ, Justice
Appellant Rader Funeral Home, Inc. appeals an award of damages against it for negligent infliction of emotional distress. In a single issue, Appellant asserts that it owed no duty of care to Appellees because Texas law requires a "special relationship" between parties as a prerequisite for recovery of mental anguish damages, and Appellees offer no evidence or insufficient evidence of the required special relationship. We affirm.
BACKGROUND
This case presents the question of what is required under Texas law for a plaintiff to recover for negligent infliction of emotional distress where a funeral home delivered the wrong body for a service. In January 2015, Roberto Chavira-the husband of Appellee Claudia Chavira and son of Appellee Lorenzo Chavira-was killed in a car accident near Kilgore, Texas. Mauricio Cardoza, who was in the vehicle with Roberto, was also killed. In accordance with normal procedure for a fatal car wreck, the dispatcher for the Gray County Sheriff's Department called Appellant Rader Funeral Home to pick up the two bodies at the scene. Two of Rader's employees arrived at the scene, picked up the two bodies, and returned them to Rader's facility in Gregg County. Law enforcement *12 contacted Roberto's father Lorenzo, who lives in San Elizario, Texas, to tell him what had happened. Later that day, Lorenzo broke the news to Claudia and took on the responsibilities of the funeral himself.
After having learned that his son's body was at Rader's facility, Lorenzo contacted a local funeral home, Socorro Funeral Home, to provide his son's funeral services. Since Lorenzo did not speak fluent English, he requested that Socorro contact Rader to determine what needed to be done to transport his son's body to El Paso, and from there to Socorro. Socorro's funeral director, Roel Martinez, called Rader and confirmed that Roberto's body was at their facility. Roel had Lorenzo come in to discuss the details of getting Roberto's body back to El Paso for the funeral services. During this meeting, Roel called Rader so he and Lorenzo could coordinate the shipping of Roberto's body in time for the funeral services. Rader said they could schedule the transportation of the body by air so it would arrive in El Paso and be picked up by Socorro employees there. Rader noted, however, that a $1,967 payment would be due immediately for the removal, embalming, and transportation services. Lorenzo then read his debit-card number to Roel, who in turn repeated it to Rader so they could process the payment.
On the day the remains were scheduled to arrive at the airport, Socorro received a body labeled Roberto Chavira and took it to their facility to begin the process of preparing the body for burial. A wake was scheduled for that evening, at which nearly 200 friends and family members were in attendance. Before the service started, Roel's wife escorted Lorenzo and Claudia to a small chapel in the back of the funeral home to preview the body. When the casket was opened, the Chaviras were shocked to find the body of Mauricio Cardoza, the other car-accident victim. Roel called Rader immediately to confirm that the other body from the accident was still at Rader's facility. They confirmed it was and sent a picture of the body via text message to Roel's phone. Lorenzo acknowledged the picture was of his son, and Rader arranged to drive the body overnight from Kilgore to San Elizario. Forced to cancel the wake, the Chaviras had an expedited funeral service the next day.
Lorenzo and Claudia filed suit against Rader and Socorro on March 10, 2015, claiming damages for negligent infliction of emotional distress. Their pleadings alleged, among other things, that:
7.2 The funeral directors of Defendant RADER FUNERAL HOME, INC. owed Plaintiffs and the minor son of the deceased, the immediate family of Roberto Chavira, the duty to exercise that degree of care a reasonably prudent funeral director would have exercised in the same or similar circumstances, with respect to matters incidental to the professional services provided by Defendant RADER FUNERAL HOME, INC.
7.3 The funeral directors of Defendant RADER FUNERAL HOME, INC. breached this duty in one or more of the following ways:
7.3.1. by misidentifying or failing to verify the identity of the remains of Roberto Chavira or Mauricio Cardoza,
...
7.3.4. shipping the remains of Mauricio Cardoza to Defendant SOCORRO FUNERAL HOME for the funeral services of Roberto Chavira, and
...
8.2 Defendants and Plaintiff LORENZO CHAVIRA had a valid, enforceable contract for which Plaintiff LORENZO CHAVIRA agreed to pay and did pay valuable consideration.
*13 ...
8.4 The funeral directors of Defendant RADER FUNERAL HOME, INC. had a duty imposed by common law to perform its contractual obligations with that degree of care a reasonably prudent person would have exercised in the same or similar circumstances.
...
9.1 At all relevant times, Defendants occupied a special relationship with Plaintiffs and the minor child, because Defendants handled the remains of their loved one, Roberto Chavira, deceased.
Rader filed a motion for summary judgment, asserting that it had no duty as a matter of law to avoid negligently inflicting emotional distress because it did not have a relationship with the Chaviras, contractual or otherwise, as required under Texas law to recover for mental anguish damages. The trial court denied the motion and the case went to trial in April 2017.[1] At trial, the Chaviras testified to their emotional distress from seeing the wrong body and the forced expedited funeral. Lorenzo claimed to have experienced shock, a feeling of helplessness, deep depression, high blood pressure, sleeplessness, anxiety, and a substantial disruption of the grieving process. Claudia testified she experienced headaches, stomach aches, loss of appetite, weight loss, deep depression, sleeplessness, nightmares, nervousness, and auditory hallucinations. The jury returned a verdict finding Rader 100 percent liable for the mental harm to the Chaviras, awarding Claudia $300,000 and Lorenzo $200,000 in emotional distress damages.[2] In its motions for directed verdict and new trial, Rader continued to assert that it owed the Chaviras no cognizable duty under Texas law. This appeal followed.
DISCUSSION
Whether the Chaviras actually suffered mental anguish is not in dispute here. Appellant's issue centers on the contention that a "special relationship" is required to recover emotional distress damages under Texas law, and it argues that based on the facts of this case that special relationship did not exist between itself and Appellees. Without the special relationship, Appellant contends, it owed no duty to Appellees and they cannot recover against it for negligent infliction of emotional distress. We construe Appellant's argument as a legal sufficiency challenge on the issue of whether a special relationship existed between the parties.
Standard of Review
In a legal sufficiency challenge, the party challenging the adverse finding must demonstrate on appeal that no evidence supports the vital fact at issue. Graham Cent. Station, Inc. v. Pena , 442 S.W.3d 261, 263 (Tex. 2014). We will overrule a legal sufficiency challenge if the evidence offered to prove the vital fact is more than a scintilla. Id. In reviewing for legal sufficiency, "we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so." [Internal quotations omitted]. Id. ,quoting Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp. , 299 S.W.3d 106, 115 (Tex. 2009). Ultimately, the test for legal sufficiency must be "whether the evidence at trial would enable reasonable and *14 fair-minded people to reach the verdict under review." City of Keller v. Wilson , 168 S.W.3d 802, 827 (Tex. 2005).
Analysis
There is no general legal duty in Texas to avoid negligently inflicting emotional distress. Boyles v. Kerr , 855 S.W.2d 593, 595-96 (Tex. 1993). The Texas Supreme Court did briefly recognize an independent right of recovery for negligent infliction of emotional distress starting in 1987. St. Elizabeth Hosp. v. Garrard , 730 S.W.2d 649, 654 (Tex. 1987), overruled by Boyles v. Kerr , 855 S.W.2d 593 (Tex. 1993). In St. Elizabeth Hospital , a young couple agreed to a request by their attending physician to have an autopsy performed on their stillborn infant. Id. , at 650. But through a mix up at the hospital the infant's body was instead delivered to a mortuary where it was disposed of in an unmarked, common grave. Id. The couple sued the hospital and the pathologist seeking damages for their mental anguish, but the couple did not allege that their mental anguish had manifested itself physically as the common law had required up to that time. Id. In its opinion, the Supreme Court noted that it was the duty of the court "to continually monitor the legal doctrines of this state to insure the public is free from unwarranted restrictions on the right to seek redress for wrongs ...," and found that the physical requirement was such a restriction. Id. , at 654. In holding that physical manifestation of symptoms was not a requirement to recover for mental anguish damages, the court also lifted the restrictions differentiating recovery for such damages from basic negligence actions, and so created a general duty not to inflict reasonably foreseeable emotional distress. Id. , at 653-54. In a concurring and dissenting opinion, Justice Spears opined that the majority had erroneously concluded that the physical manifestation requirement was merely a screening device, when in fact it served to distinguish between compensable and noncompensable injury. Id. , at 655 (Spears J. concurring/dissenting opinion, opn. on mt. rehear).
Six years later, the Supreme Court specifically overruled its holding in St. Elizabeth Hospital to the extent it created a general duty to not inflict reasonably foreseeable emotional distress. In Boyles v. Kerr , the court reviewed an award of damages for negligent infliction of emotional distress where the appellant had secretly videotaped himself and the appellee engaging in sexual intercourse. Boyles v. Kerr , 855 S.W.2d 593, 594 (Tex. 1993). He showed the video to a group of friends and gossip about the tape quickly spread to friends and acquaintances of the appellee at Southwest Texas State University. Id. Appellee claimed she was stigmatized with the nickname "porno queen," and suffered humiliation and severe emotional distress from the embarrassment and notoriety. Id. She sued appellant, initially proceeding on several grounds of recovery, but ultimately went to the jury only on the question of negligent infliction of emotional distress.[3] Id. In reversing the damages award, the Supreme Court held that negligent infliction of emotional distress damages could only be recovered in connection with a defendant's breach of an independent duty imposed by law, and that it was not a *15 cause of action in and of itself. Id. , at 595-96. In so holding, the court noted certain relationships may give rise to a duty supporting an emotional distress award, but there must be a specific duty of care that, under the law, arises from the relationship. Id. , at 600.
The test for what circumstances would qualify a plaintiff to recover for negligent infliction of emotional distress was further refined a few years later in City of Tyler v. Likes . In Likes , the Texas Supreme Court addressed the issue of whether a plaintiff could recover from a city for mental anguish resulting from her house being flooded by a negligently installed drainage channel absent a special relationship or actual malice on the city's part. City of Tyler v. Likes , 962 S.W.2d 489, 493 (Tex. 1997). The court noted that, although mental anguish is a "real and serious harm," the variability of human nature makes it difficult to foresee, and the nature of the cause makes it inherently difficult to verify. Id. , at 494-95. It then clarified its ruling in Boyles , and held the independent legal duty it required there could arise out of certain "special relationships," including the physician-patient relationship "and a very limited number of contracts dealing with intensely emotional noncommercial subjects such as preparing a corpse for burial ... or delivering news of a family emergency." [Internal citations omitted]. Id. , at 496. The court went on to state that absent intent or malice on the defendant's part, serious bodily injury to the plaintiff, or the existence of a special relationship between the parties, recovery for mental anguish damages was only permitted in "a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result." Id. These included suits for wrongful death and actions by bystanders for a close family member's serious injury. Id. Finally, the court noted it's analysis was far from exhaustive because the law of emotional distress damages is ultimately rooted in societal judgments about the gravity of certain wrongs and their likely effects. Id.
Turning to the case at hand, Appellant asserts the prior decisions show a special relationship between it and Appellees is a prerequisite for the latter to recover for negligent infliction of emotional distress. Appellant further contends that based on Likes and other cases, the only way for a special relationship to have formed here was through privity of contract, and that privity of contract between it and Appellees was clearly absent. To support this contention, it points out that at the time of the transaction its employee was on the phone with Roel Martinez of Socorro, not Lorenzo Chavira, and that other than the payment from Lorenzo's debit card, it had no other contact with the Chaviras whatsoever. Appellant further points out its service receipt from the transaction lists "Roel Martinez/Socorro Funeral Home" as the buyer of the services, not Lorenzo or Claudia Chavira. Conversely, Appellees argue Roel was acting as interpreter for Lorenzo and Rader understood it was providing services for Lorenzo, and thus contracting with him, as evidenced by the phone discussion and payment with his debit card. Appellees further contend the law does not require contractual privity but that a contractual relationship is merely a factor to be considered in determining the foreseeability of emotional distress damages.
As the parties point out, there has been a split of authority in our sister courts on whether contractual privity is required to form the special relationship permitting a next of kin to sue for negligent infliction of emotional distress for negligence involving a decedent's body. Appellant cites Lions Eye Bank of Texas v. Perry , a Houston *16 case explicitly holding a contractual relationship between the parties is a necessary element to form the requisite special relationship. Lions Eye Bank of Texas v. Perry , 56 S.W.3d 872, 877 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (because there was no contractual relationship between the parties, plaintiffs could not recover emotional distress damages from eye bank that removed deceased loved one's eyes without permission of the family). On the other hand, Appellees point to the Eastland Court of Appeals' recent decision in Nelson v. SCI Texas Funeral Services, Inc. , holding that the legal basis for next of kin to sue for mental anguish arises from a quasi-property right in the decedent's body, and that a contractual relationship between the parties is not necessary for recovery. Nelson v. SCI Texas Funeral Services, Inc. , 484 S.W.3d 248, 256 (Tex.App.-Eastland 2016, pet. granted), aff'd , No. 16-0297, 540 S.W.3d 539, 2018 WL 1023673 (Tex. Feb. 23, 2018) (son of decedent was entitled to recover damages for negligent infliction of emotional distress when funeral home cremated his mother's remains on the instructions of more distant relatives who claimed they were unable to locate him).[4]
The Texas Supreme Court recently resolved this split with its decision in Nelson . SCI Texas Funeral Services v. Nelson , No. 16-0297, 540 S.W.3d 539, 540-41, 2018 WL 1023673, at *1 (Tex. Feb. 23, 2018). In Nelson, the Appellee's mother passed away suddenly of a heart attack and her sisters were notified as her next of kin. Id. , at 540-41, 2018 WL 1023673 at *1. The sisters informed the funeral home Appellee's mother also had an adult son, Nelson, but they did not know where he was or how to contact him. Id. Both the funeral home and the family attempted to contact Nelson by calling his last employer, friends, and even the police department, but were unable to locate him. Id. The funeral home knew that Nelson had the superior right to control the disposition of his mother's remains under Section 711.002(a) of the Texas Health and Safety Code, but the sisters ultimately signed an authorization to have the mother's remains cremated and scattered her ashes. Id. , at 540-42, 2018 WL 1023673 at *1-*2. Nelson discovered what had happened a few days later and sued SCI for negligence in cremating his mother's body without his authorization. Id. , at 541-42, 2018 WL 1023673 at *2. Nelson conceded his family had no way of contacting him in the days following his mother's death-he had lost his job a few days earlier, had no cell phone, and was staying with someone unknown to the family-and conceded he would not have done anything differently than his mother's sisters had done. Id. He sought mental anguish damages for being denied the chance to pay his last respects to his mother. Id. The funeral home acknowledged mental anguish damages were available for negligent mishandling of a corpse if there was a special relationship, but asserted the relationship could only be formed through contractual privity, citing Lions Eye Bank . Id. , at 546-47, 2018 WL 1023673 at *6. Referencing its decisions in St.Elizabeth Hospital and several prior cases,[5] the Texas Supreme Court held the "relationship between a person disposing of a decedent's remains and the next of kin *17 is special, even without a contract." Id. Further, the Court held that while contracts dealing with intensely personal subjects like "funeral services," may give rise to mental anguish damages. Id. However, a contractual relationship is not required if the defendant breaches an independent legal duty; that is, the duty to not negligently mishandle a corpse. Id. The Court held the duty to not negligently mishandle a corpse is such a duty. Id. Finally, it specifically disapproved of Lions Eye Bank "to the extent it holds to the contrary."[6] Id. , at 548, 2018 WL 1023673 at *7.
Turning to our facts, Rader took possession of Roberto's remains from the scene of the accident, stored and embalmed the body, was paid to transport the body across the state for the funeral, and delivered the wrong body. This denied the Chaviras the opportunity to have a wake for their son and husband with his family and friends. Under the holding in Nelson , a special relationship existed between Rader and the Chaviras when Rader assumed responsibility for disposing of Roberto's remains. Nelson , 540 S.W.3d at 546-47, 2018 WL 1023673, at *6. We accordingly find the Chavira's contention correct that contractual privity was not required to recover mental anguish damages. Rader breached the independent legal duty it owed the Chaviras to not mishandle their loved one's remains and thus interfere with putting him to rest. See Nelson , 540 S.W.3d at 546-47, 2018 WL 1023673, at *6 ; Likes , 962 S.W.2d at 496 ; Boyles , 855 S.W.2d at 596. Crediting evidence that supports the verdict if reasonable jurors could have done so, and disregarding contrary evidence unless reasonable jurors could not have done so, we find there was more than a scintilla of evidence that a special relationship existed between the Chaviras and Rader. See Nat'l Dev. & Research Corp. , 299 S.W.3d at 115. Thus, the evidence at trial was sufficient to enable reasonable and fair-minded people to conclude Rader had a special relationship with the Chaviras, and that Rader accordingly owed a duty of care to them. Accordingly, Rader's sole issue is overruled.
CONCLUSION
Having overruled Appellant's only issue, the judgment of the trial court is affirmed.

Appellees settled with Socorro prior to trial and dismissed their claims against it.

The trial court ultimately reduced the award by the amounts attributable to the settlement with Socorro, and awarded Claudia $288,000 and Lorenzo $192,000 in its final judgment.

In a concurring opinion, Justice Gonzalez asserted that the reason appellees attorneys proceeded only on the claim of negligent infliction of emotional distress, when they had also initially claimed intentional infliction of emotional distress and invasion of privacy, was because Texas homeowners policies only cover negligent acts and exclude intentional torts; thus, the underlying issue in the case was the search for a "deep pocket." Boyles , 855 S.W.2d at 604 (Gonzalez, J. concurring opinion).

The Supreme Court granted review in this case and heard oral argument on December 6, 2017. http://www.txcourts.gov.

Pat H. Foley & Co. v. Wyatt , 442 S.W.2d 904 (Tex.Civ.App.-Houston [14th Dist.] 1969, writ ref'd n.r.e.) ; Classen v. Benfer , 144 S.W.2d 633 (Tex.Civ.App.-San Antonio 1940, writ dism'd judgm't cor.) ; Love v. Aetna Casualty & Surety Co. , 99 S.W.2d 646, 648 (Tex. Civ. App.-Beaumont 1936), aff'd , 132 Tex. 280, 121 S.W.2d 986 (1938).

The Nelson court also noted that having concluded the common law gave Nelson the right to recover mental anguish damages, it did "need not consider his argument that Section 711.002 of the Health and Safety Code creates a special relationship between the person disposing of a decedent's remains and the person with the superior right to control that disposition." Nelson , 540 S.W.3d at 548 n.67, 2018 WL 1023673, at *7 n.67.