**Opinion filed March 29, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00239-CV
_____

## AMWINS SPECIALTY AUTO, INC., Appellant

## V.

## EDUARDO CABRAL, Appellee

**On Appeal from the County Court at Law**
**Ector County, Texas**
**Trial Court Cause No. CC-26,689**

### O P I N I O N

This case involves a "hit and run" car accident between Ivan Molina and an unidentified driver who fled the scene of the accident on foot and abandoned the vehicle. The abandoned vehicle, an Infiniti, was registered to Eduardo Cabral. After the accident, AmWins Specialty Auto, Inc., as subrogee of Molina, sued Cabral for negligence, negligent entrustment, and "aiding and abetting." Cabral filed a no-evidence and a supplemental no-evidence motion for summary judgment. The trial court granted summary judgment in Cabral's favor.

On appeal, AmWins brings two issues in which it contends that the trial court erred in the entry of summary judgment in favor of Cabral. In its first issue, AmWins argues that it produced more than a scintilla of evidence on all three of its causes of action against Cabral. In its second issue, AmWins argues that Cabral's supplemental no-evidence motion for summary judgment failed to specify the elements of AmWins's aiding-and-abetting claim for which Cabral asserted there was no evidence. We affirm.

*Background Facts*

The accident occurred in the early morning hours on March 23, 2014, in Odessa. The unidentified driver of the Infiniti ran a stop sign and collided with Molina at an intersection and then fled on foot from the accident scene. The driver was never identified. It is undisputed that record title to the Infiniti was in Cabral's name and that Cabral had been maintaining a liability insurance policy on the vehicle through State Farm Insurance Company. When the police questioned Cabral about the accident two weeks later, he denied being the driver of the Infiniti. Instead, Cabral explained that he had previously sold the car to his former roommate, Jesus Vargas, whom he had lived with in an RV in Odessa for about a year.

Cabral testified in his deposition that the last time he saw Vargas was before the accident, on or about March 13, when Cabral left for El Paso to see his wife. Cabral said that, on the day of the accident, he was still in El Paso with his wife and that, when he returned to Odessa on March 24, Vargas had moved out of the RV they were living in and had taken the car with him. Cabral also stated that he had not seen or communicated with Vargas since and that he had no information with regard to Vargas. Additionally, AmWins was unable to locate Vargas.

In Cabral's deposition, Cabral testified that he had never transferred the car's certificate of title to Vargas because Vargas never paid him the full asking price for the car. Cabral also testified that he had maintained liability insurance for the

2

vehicle. When asked why he continued to insure the vehicle, Cabral said: "I don't know"; "if something happens, I'll still keep the [Infiniti] because he hasn't paid me the full amount"; and "I was waiting for Jesus Vargas to get his own insurance and . . . he never did, so that's why I kept paying for that liability insurance." Cabral testified that the first time he learned about the accident was two weeks after the accident, when the police questioned him; although later evidence showed that Cabral attempted to cancel his insurance policy on the vehicle the day after the accident. Cabral also said that he had no way of contacting Vargas, but the police report showed the opposite—that Cabral and the police attempted to contact Vargas.

AmWins propounded interrogatories and requests for production and served them on Cabral, seeking information about the driver of the vehicle and any documentary evidence supporting the sale of the vehicle to Vargas. Cabral responded that he did not know who the driver was. Cabral also stated that he had no documentary evidence of the sale because he had entered into an "oral agreement" with Vargas for the sale of the vehicle. Cabral's discovery responses led AmWins to file a motion to compel. The premise of the motion was that Cabral failed to provide any sort of information on Vargas or any satisfactory answers as to why Cabral retained ownership over, and continued to insure, the vehicle. The trial court denied AmWins's motion to compel on the basis that it could not compel information from Cabral that Cabral did not have.

AmWins sued Cabral, asserting causes of action for negligence and negligent entrustment. Under its theory of negligence, AmWins alleged that Cabral negligently operated the vehicle. Under its theory of negligent entrustment, AmWins alleged that Cabral negligently entrusted the vehicle to a "third party."

AmWins later amended its petition to allege an aiding-and-abetting cause of action. Under that theory, AmWins alleged that Cabral "aided and abetted a third party by knowingly participating in a breach of duty owed by the third party to the

3

Plaintiff's insured" and "knowingly allowed a third party to operate a motor vehicle registered to and owned by Defendant without verifying whether the third party was a licensed driver or maintained a valid insurance policy." AmWins asserted that Cabral continued to aid and abet the alleged tortfeasor by refusing to tender any information regarding the person to whom he sold the vehicle.

Cabral's original no-evidence motion for summary judgment only addressed AmWins's negligence and negligent entrustment claims. In this regard, these were the only theories of recovery that AmWins had asserted at the time Cabral filed his no-evidence motion. AmWins subsequently amended its petition to add the aiding-and-abetting cause of action. Cabral subsequently filed a supplemental no-evidence motion to address the aiding-and-abetting claim.

In his no-evidence motions for summary judgment, Cabral challenged all the elements of AmWins's negligence claim. With respect to AmWins's negligent entrustment claim, Cabral asserted that AmWins had no evidence that Cabral entrusted the vehicle to a third party; that the third party was an unlicensed, incompetent, or reckless driver; or that Cabral knew or should have known that the third party was an unlicensed, incompetent, or reckless driver. In his supplemental motion, Cabral challenged AmWins's aiding-and-abetting claim on the following ground:

> Plaintiff has not cited any statutory or common law precedent creating a civil cause of action for **Aiding and Abetting** another person for negligence in the operation of a motor vehicle. Defendant was not able to identify any statute or common law precedent creating a civil cause of action for aiding and abetting another person for negligence in the operation of a motor vehicle. Defendant assumes plaintiff was attempting to allege a variation of negligent entrustment based on the allegation that defendant knowingly allowed a third party to operate his motor vehicle without verifying that person was licensed or insured. . . . [P]laintiff has not established the elements of a negligent entrustment claim for "aiding and abetting." If plaintiff instead claims the "aiding and abetting" is related to defendant allegedly refusing to

4

provide information to further identify Jesus Vargas, (the person to whom defendant sold the vehicle) or his current whereabouts, defendant has already provided all information in his possession regarding Jesus Vargas.

*Analysis*

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). After adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). We review a no-evidence motion for summary judgment under the same legal sufficiency standard as a directed verdict. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). Under this standard, the nonmovant has the burden to produce more than a scintilla of evidence to support each challenged element of its claims. *Id.* We view the evidence "in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not." *Id.*

AmWins's second issue concerns a procedural matter that we address first. In its second issue, AmWins contends that Cabral's supplemental no-evidence motion was procedurally deficient because it failed to challenge specific elements of AmWins's aiding-and-abetting claim. We disagree.

Rule 166a(i) requires that no-evidence motions for summary judgment "state the elements as to which there is no evidence." TEX. R. CIV. P. 166a(i). The comment to Rule 166a(i) states that "[t]he motion must be specific in challenging the evidentiary support for an element of a claim or defense" and that "paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case." TEX. R. CIV. P. 166a(i) cmt.

5

In support of its no-evidence motion, Cabral asserted that AmWins "has not cited any statutory or common law precedent creating a civil cause of action for **[a]iding and [a]betting** another person for negligence in the operation of a motor vehicle." As noted below, we agree with Cabral's contention that an independent civil cause of action for aiding and abetting does not exist in Texas. The lack of a viable cause of action begs the obvious question: How can a party challenge the specific elements of a nonviable cause of action? The answer is simple—it cannot. Accordingly, we conclude that Cabral's assertion that aiding and abetting is not an independent cause of action was sufficient under Rule 166(a)(i). We overrule AmWins's second issue.

In its first issue, Amwins challenges the entry of summary judgment on all three of its theories of liability. For all three of AmWins's causes of action, it primarily asserted that Cabral's inconsistent deposition testimony, among other evidence, such as Cabral's ownership and insurable interest in the vehicle, was sufficient evidence to raise a fact issue on whether Cabral was the driver, whether Cabral negligently entrusted the vehicle to Vargas, and whether Cabral aided and abetted Vargas.

*Negligence*

In order to prevail on a cause of action for negligence, the plaintiff must satisfy three elements: (1) a legal duty owed by the defendant to the plaintiff; (2) breach of that duty; and (3) damages proximately caused by such breach. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). The threshold inquiry is duty. *Nelson v. SCI Texas Funeral Servs., Inc.*, 484 S.W.3d 248, 253 (Tex. App.—Eastland 2016), *aff'd*, 540 S.W.3d 539 (Tex. 2018). In order for AmWins to prove that Cabral owed Molina a legal duty, AmWins must produce some evidence that Cabral was the unidentified driver involved in the accident with Molina. *See Ravani v. Vaught*, 231 S.W.3d 568, 570–71 (Tex. App.—Dallas 2007, no pet.)

6

(because no evidence was presented that the defendant was driving the truck involved in the accident, the defendant did not owe a legal duty).

The premise of AmWins's claim on appeal is that, based on the inconsistencies in Cabral's deposition, a jury could disbelieve Cabral's version of the events and conclude that he was the driver. In other words, AmWins has no direct evidence that Cabral was the driver of the Infiniti. Instead, AmWins argues that a question concerning Cabral's credibility is sufficient to raise a fact issue as to whether he was the driver. AmWins relies on the following inconsistency in Cabral's deposition: Cabral testified that he did not find out about the accident until he spoke to police, but Cabral's "Premium Payment History Log" from State Farm showed that Cabral attempted to cancel his insurance policy the day after the accident. We disagree.

The Fourteenth Court of Appeals addressed a similar contention in *Soodeen v. Rychel*, 802 S.W.2d 361, 364–65 (Tex. App.— Houston [14th Dist.]1990, writ denied). The issue in that case was whether the owner of a vehicle "entrusted" the vehicle to one of two possible drivers involved in a car accident with the plaintiff. 802 S.W.2d at 362–63. The plaintiff had no direct evidence that the owner entrusted his vehicle to either of the possible drivers. *Id.* at 363. The owner of the vehicle filed a traditional motion for summary judgment, submitting an affidavit in which he asserted that he did not give his consent to either of the possible drivers to operate his vehicle. *Id.* at 361. In response, the plaintiff submitted the owner's own deposition testimony in an attempt to raise a fact issue on the owner's consent. *Id.* at 363–65.

The court in *Soodeen* concluded that the plaintiff's evidence was insufficient to overcome summary judgment. *Id.* at 365. The court noted that, "[t]o prevail at trial, [the plaintiff] would be required to affirmatively prove that [the vehicle owner] negligently entrusted his vehicle to [either of the two possible drivers]. It is not

7

enough that a jury might disbelieve [the vehicle owner's] testimony." *Id.* The court then quoted *Casso v. Brand* for the following proposition:

> While it is conceivable that a defendant's trial testimony, under the rigors of cross-examination, could provide that requisite proof, it is more likely that plaintiff will have to secure that evidence elsewhere. If he cannot secure it during the discovery process, he is unlikely to stumble on it at trial.

*Id.* (quoting *Casso v. Brand*, 776 S.W.2d 551, 558–59 (Tex. 1989)).

We conclude that AmWins's evidence is no more than a scintilla of evidence to prove that Cabral was the driver. Although Cabral attempted to cancel his insurance policy the day after the accident, this fact does not allow us to infer that he was the driver. At most, we could infer that Cabral may have had knowledge of the accident earlier than he claimed in his deposition (he stated that he found out two weeks afterward). But knowledge of the accident does not lead to an inference that Cabral was the driver. As was the case in *Soodeen*, in the absence of affirmative evidence that Cabral was the driver of the Infiniti, it is not enough that a jury might disbelieve Cabral's testimony at trial. *See id.*

*Negligent Entrustment*

The elements of a negligent entrustment claim are "(1) entrustment of a vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner knew or should have known to be unlicensed, [incompetent, or reckless;] (4) that the driver was negligent on the occasion in question; and (5) that the driver's negligence proximately caused the accident." *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987). Cabral challenged the first three elements. "[T]he name 'negligent entrustment' can be misleading, because the claim requires a showing of more than just general negligence." *4Front Engineered Solutions, Inc. v. Rosales*, 505 S.W.3d 905, 910 (Tex. 2016). The plaintiff in a negligent entrustment claim must show that the driver was incompetent or reckless and that

the vehicle owner knew or should have known of the driver's incompetence or recklessness at the time of the entrustment. *Id.* at 909–10.

Under its theory of negligent entrustment, AmWins asserts that, if Cabral was not the driver, there is evidence that Cabral entrusted, rather than sold, the vehicle to Vargas. AmWins again asserts that the contradictory testimony of Cabral is sufficient to raise a fact issue. Accordingly, the circumstances of AmWins's contentions are similar to those in *Soodeen*.

Even if we assume that Cabral "entrusted" the vehicle to Vargas, there is still no evidence that Vargas was driving the Infiniti at the time of the accident. Furthermore, even if we assume that Vargas was the driver of the vehicle involved in the accident, AmWins presented no evidence that Vargas was an unlicensed, reckless, or incompetent driver. Specifically, AmWins produced no evidence of Vargas's driving record, driving habits, or his mental or physical condition at the time he was allegedly entrusted with the vehicle. *See id.* AmWins argues that "the accident speaks for itself" and that, because the driver fled the scene of the accident, the accident and the driver's flight from the scene is probative evidence that he was a reckless driver. We note that there is no indication in the record that the driver was acting recklessly, as opposed to negligently, when he ran the stop sign. *See id.* at 911 ("Evidence of negligence does not establish recklessness.").

Moreover, there was no evidence presented that Cabral knew or should have known that Vargas was an unlicensed, incompetent, or reckless driver. AmWins argues that Cabral made admissions that create a strong inference that Cabral knew Vargas was an unlicensed, incompetent, or reckless driver. AmWins cites to evidence that (1) Cabral testified that he did not know if his roommate had a valid driver's license, (2) Cabral stated that he maintained ownership of the vehicle in case Vargas did not pay the full amount, and (3) Cabral has refused to tender information on Vargas.

First, there is no evidence that Vargas did not have a driver's license, and even if he did not, the absence of a required legal license does not establish incompetence or recklessness. *Id.* (citing *Williams v. Steves Indus., Inc.*, 699 S.W.2d 570, 574 (Tex. 1985) ("[W]hether a driver has a license does not determine whether a driver is *in fact* incompetent. Some incompetent drivers are licensed, and some competent drivers are unlicensed.")). Second, the fact that Cabral maintained ownership of the vehicle is not evidence of what Cabral knew or should have known about Vargas's driving habits; rather, it is only evidence of Cabral's ownership. *See Loom Craft Carpet Mills, Inc. v. Gorrell*, 823 S.W.2d 431, 432 (Tex. App.—Texarkana 1992, no writ). Lastly, AmWins's allegation that Cabral has refused to tender information on Vargas is irrelevant to whether Vargas was an incompetent or reckless driver. Accordingly, there is no evidence to support AmWins's negligent entrustment claim.

*Aiding and Abetting*

Cabral's no-evidence ground pertaining to AmWins's claim for aiding and abetting is not an ordinary no-evidence ground because it is premised on a legal contention that the claim does not exist in Texas. In the context of Rule 166a(i), Cabral's no-evidence motion for summary judgment presents a legal question of whether or not AmWins has pleaded a cognizable cause of action under Texas law. We have previously determined that a legal contention of this type is proper in the context of a no-evidence motion for summary judgment. *Nelson*, 484 S.W.3d 252–53; *Cone v. Fagadau Energy Corp.*, 68 S.W.3d 147 (Tex. App.—Eastland 2001, pet. denied). As we stated in *Cone*:

> [T]he court must determine the law which is applicable to the case with respect to any no-evidence motion for summary judgment in order to determine if the summary judgment evidence raises a genuine issue of material fact. The fact that a dispute exists with respect to the applicable law does not prevent the court from performing its function of analyzing the non-movant's evidence to determine if it raises a fact issue.

68 S.W.3d at 156 n.4. Accordingly, we will address the merits of Cabral's legal argument on appeal to determine whether the aiding-and-abetting theory alleged by AmWins is a recognized cause of action. "This is a question of law that we review de novo." *Nelson*, 484 S.W.3d at 253.

The Texas Supreme Court has not formally adopted aiding and abetting as a cause of action. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224–25 (Tex. 2017) (citing *Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996)). The supreme court has addressed, without specifically adopting, a "concert of action" theory that stems, in part, from the RESTATEMENT (SECOND) OF TORTS § 876 (1977). *See Juhl*, 936 S.W.2d at 643. Section 876(b) imposes liability on a person for the harmful conduct of another if the person "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." RESTATEMENT (SECOND) OF TORTS § 876(b). The *Juhl* court declined to adopt Section 876 and specifically stated that the viability of the claim was an "open question." *Id.* at 643. Other courts of appeals, citing *Juhl*, have referred to the concert-of-action theory as "aiding and abetting." *See, e.g.*, *First United Pentecostal Church of Beaumont v. Parker*, 520 S.W.3d 53, 60 (Tex. App.—Beaumont 2015), *aff'd in part, rev'd in part*, 514 S.W.3d 214 (Tex. 2017); *W. Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 437 S.W.3d 917, 921 (Tex. App.—Dallas 2014, pet. denied); *Martinez v. Ford Motor Credit Co.*, No. 04-11-00306-CV, 2012 WL 3711347, at *4 (Tex. App.—San Antonio Aug. 29, 2012, pet denied) (mem. op.).

Under Texas law, it is still an open question as to whether an aiding-and-abetting claim exists separate and apart from a claim of civil conspiracy. *See Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 n.7 (Tex. 2001). To decide whether a new cause of action exists, we engage in a "cost-benefit analysis to assure that this expansion of liability is justified." *Kinsel v. Lindsey*, 526 S.W.3d

411, 423–24 n.6 (Tex. 2017) (quoting *Roberts v. Williamson*, 111 S.W.3d 113, 118 (Tex. 2003)). The factors we consider include the following:

> (1) the foreseeability, likelihood, and magnitude of the risk of injury; (2) the existence and adequacy of other protections against the risk; (3) the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the persons in question; and (4) the consequences of imposing the new duty, including whether Texas's public policies are served or disserved, whether the new duty may upset legislative balancing-of-interests, and the extent to which the new duty provides clear standards of conduct so as to deter undesirable conduct without impeding desirable conduct or unduly restricting freedoms.

*Solis v. S.V.Z.*, 566 S.W.3d 82, 103 (Tex. App.—Houston [14th Dist.] 2018, no pet. h.) (citing *Kinsel*, 526 S.W.3d at 423 n.6)).

In *Solis*, our sister court recently addressed whether aiding and abetting is a recognized cause of action under Texas law. *Id.* at 87 (claimant asserted a claim for aiding and abetting sexual assault). The court in *Solis* concluded that it is not a recognized cause of action. *Id.* at 103. First, the court acknowledged that the supreme court had yet to adopt the cause of action. *Id.* at 102 (citing *Juhl*, 936 S.W.2d at 643; *Ernst & Young*, 51 S.W.3d at 583; *Parker*, 514 S.W.3d at 224). It then reasoned that the party alleging the cause of action did not discuss the applicability of the *Kinsel* factors, nor did it urge any compelling reasons as to why aiding and abetting should be recognized separate and apart from a claim for civil conspiracy. *Id.*; *see Kinsel*, 526 S.W.3d at 423–24 n.6.

We agree with the reasoning of *Solis*. AmWins offers no compelling reasons as to why we should change existing law or why existing law is not sufficient. In light of the supreme court cases addressing the subject, we decline to adopt aiding and abetting as an independent cause of action. Moreover, AmWins has another adequate remedy to protect against the risk at issue—a negligent entrustment cause of action. We have previously listed the elements of a negligent entrustment claim. *See Schneider*, 744 S.W.2d at 596. A claimant can prove that a defendant vehicle

owner "should have known" of the driver's incompetence or recklessness. *Rosales*, 505 S.W.3d at 910. AmWins's aiding-and-abetting claim—which asserts that Cabral allowed Vargas to operate Cabral's vehicle without verifying whether Vargas had a driver's license or insurance—is essentially an allegation that Cabral should have known, but failed to determine, whether Vargas was licensed or had insurance. Accordingly, we conclude that the recognized cause of action for negligent entrustment is an adequate protection for the risk that AmWins seeks to protect. *See Kinsel*, 526 S.W.3d at 424. We overrule AmWins's first issue.

### *This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


March 29, 2019

Panel consists of: Bailey, C.J.,
Willson, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.